*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATHY PLACIDO,

        Plaintiff-Appellee,

v

ABDELKADER HAWASLI, M.D., and HAWASLI
AND ASSOCIATES SURGICAL SPECIALISTS,
P.C., doing business as ASCENSION MEDICAL
GROUP MICHIGAN,

        Defendants,

and

ASCENSION MEDICAL GROUP MICHIGAN,
doing business as ASCENSION MEDICAL
GROUP, and ASCENSION ST. JOHN HOSPITAL,
doing business as ST. JOHN HOSPITAL AND
MEDICAL CENTER,

        Defendants-Appellants.

UNPUBLISHED
June 1, 2023

No. 359890
Wayne Circuit Court
LC No. 20-003376-NH

Before: RICK, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

Defendants Ascension Medical Group Michigan, doing business as Ascension Medical Group ("AMG"), and Ascension St. John Hospital, doing business as St. John Hospital and Medical Center ("St. John Hospital") appeal by leave granted[1] three orders denying their motions for summary disposition brought under MCR 2.116(C)(10). For the reasons stated in this opinion,

---

[1] *Placido v Hawasli*, unpublished order of the Court of Appeals, entered April 28, 2022 (Docket No. 359890).

-1-

we affirm the trial court's denial of AMG's motion for summary disposition regarding plaintiff's claim of vicarious liability, reverse the denial of St. John Hospital's motion for summary disposition regarding vicarious liability, and affirm the denial of defendants' motion seeking to dismiss the claims filed as ordinary negligence rather than medical malpractice.

## I. BACKGROUND

Plaintiff is a 56-year-old female with a history of hyperparathyroidism, a condition in which the parathyroid glands produce excess parathyroid hormone. Plaintiff saw Dr. Abdelkader Hawasli who recommended surgical removal of the parathyroid glands, and plaintiff signed a consent form for a "minimally invasive right inferior parathyroidectomy." According to Dr. Hawasli, he told plaintiff there was a possibility that he might also have to remove her thyroid gland and that she consented to such a procedure. By contrast, plaintiff testified that she explicitly told Dr. Hawasli during a discussion about the surgery that she would not consent to the removal of her thyroid due to the known risk of damage to her larynx because her job as a casino card dealer required that she be able to speak clearly and loudly.[2] During the surgery, Dr. Hawasli removed plaintiff's thyroid and plaintiff alleges that as a result she suffered injury to her laryngeal nerve causing difficulty speaking as well as drinking and breathing.

Plaintiff filed suit against Dr. Hawasli, Hawasli's P.C. (Hawasli and Associates Surgical Specialists, P.C.), AMG and St. John Hospital. Three summary disposition motions were filed pursuant to MCR 2.116(C)(10). The first motion was filed by AMG and St. John Hospital and argued that to the extent the complaint pleaded claims of negligence against these defendants, those claims must be dismissed because this was solely a medical malpractice suit. The second summary disposition motion, filed by AMG, argued that there was no basis to impose vicarious liability because AMG did not control Dr. Hawasli's medical decisions. The third summary disposition motion filed by St. John Hospital similarly argued that Dr. Hawasli was not an actual or ostensible agent of St. John; he merely used the hospital as a site for the surgery, and plaintiff looked to him, not the hospital, for treatment.

In response, plaintiff argued that her complaint sounded in ordinary negligence because no medical judgment was required to know that, when a patient is adamant that her thyroid not be removed, the doctor is without authority to violate the patient's direction regarding the limits of the surgery. As to vicarious liability, plaintiff argued that there was a factual question regarding whether Dr. Hawasli was an actual agent of AMG that must be submitted to the jury for resolution. Plaintiff argued that under the professional services agreement (PSA) entered into between AMG and Hawasli & Associates Surgical Specialists, P.C.,[3] AMG retained significant control over Dr. Hawasli and promoted him and his clinic as part of AMG. She argued that Dr. Hawasli was an employee or agent of AMG by virtue of this agreement. Plaintiff relied on the same agreement to

---

[2] That there was a risk of damage to the larynx is not in dispute. Dr. Hawasli's operative report states that the operation carried "a very high risk of developing a complication such as injury to the recurrent laryngeal nerves [causing] loss of voice that could be temporary or permanent."

[3] At the time the PSA was executed, AMG was known as Medical Resources Group.

argue that there was a factual question to be resolved by a jury regarding whether Dr. Hawasli was an agent of St. John Hospital.

The trial court entered three orders denying each of the respective motions, and this appeal followed.

## II. ANALYSIS

## A. VICARIOUS LIABILITY

AMG and St. John Hospital argue that the PSA does not establish sufficient control to impose an agency relationship, and in turn, liability upon them for the actions of Dr. Hawasli. We conclude that the trial court correctly denied summary disposition as to AMG because the terms of the PSA create a question of fact for the jury as to agency. However, we agree that St. John Hospital was entitled to summary disposition as plaintiff failed to establish a basis for the finder of fact to conclude that Dr. Hawasli was its employee or agent.[4]

Generally, "a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients." *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 250; 273 NW2d 429 (1978). However, "a hospital may be vicariously liable for the malpractice of actual or apparent agents." *Chapa v St Mary's Hosp of Saginaw*, 192 Mich App 29, 33; 480 NW2d 590 (1991). In an actual agency relationship, "it is the power or ability of the principal to control the agent that justifies the imposition of vicarious liability." *Laster v Henry Ford Health Sys*, 316 Mich App 726, 735; 892 NW2d 442 (2016). The labels that the parties use to define the relationship are not dispositive.[5] *Id*. at 736. "Where there is a disputed question of agency, any [evidence], either direct or inferential, tending to establish agency creates a question of fact for the jury to determine." *Meretta v Peach*, 195

---

[4] A trial court's decision on a motion for summary disposition is reviewed de novo. *Batista v Office of Retirement Servs*, 338 Mich App 340, 354; 980 NW2d 107 (2021). "Summary disposition under MCR 2.116(C)(10) is proper if there is no genuine issue about any material fact and the moving party is entitled to judgment . . . as a matter of law." *Bergen v Baker*, 264 Mich App 376, 381; 691 NW2d 770 (2004). In reviewing a motion under this subrule, courts "considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

[5] AMG relies heavily on the "Independent Contractor Status" provisions of the PSA which state in part that "[n]othing in this Agreement is intended to allow [AMG] to exercise control or direction over the manner or method by which PC and Physician perform the Services which are the subject of this Agreement." But as noted, the labels used by the parties to the PSA are not dispositive. Instead, we must look past these general disclaimers and examine the contract requirements and the control in fact exercised by AMG over Dr. Hawasli.

-3-

Mich App 695, 697; 491 NW2d 278 (2002). "Agency is always a question of fact for the jury." *Grewe*, 404 Mich at 253 (quotation marks and citation omitted).

We conclude the terms of the PSA between AMG and Dr. Hawasli's P.C., create a question of fact for the jury as to agency. The PSA provides that Dr. Hawasli's P.C. may not alter its services without consulting with AMG and that AMG "shall make the final decision in a manner consistent with AMG's policy and procedures." Section 1.2. It further provides that the physicians are "required to comply with any policy, procedure, bylaw, ethical or religious directive, program or other rule or required of [AMG.]" Section 1.5. It sets forth credentialing standards for the physicians (section 1.4), states that AMG and not the physicians shall retain and control the patients' medical records (section 2.5), that the physicians may not provide services other than those provided at the AMG clinic, i.e., the contract is exclusive (section 2.8), that AMG will select the practice management electronic office software to be used, that the practice will transition to electronic medical records paid for by AMG (section 3.1), and that AMG will receive all payments for the medical services provided (section 3.1). These provisions show that AMG exercised far more than a *de minimis* degree of control over Dr. Hawasli's practice.

AMG argues that it does not have any role in the supervision of Dr. Hawasli's medical performance. But Section 2.7 of the PSA is captioned, "Quality Assurance, Risk Management, and Utilization Review," and reads:

> PC and Physician shall participate with [AMG] and its programs related to the Clinic to ensure the consistency, quality, appropriateness, and medical necessity of services provided at the Clinic, and both parties shall cooperate with the other in the development of quality assurance, risk management and utilization review programs, and the like.

Mandatory programs to ensure the quality and medical necessity of Dr. Hawasli's services, as well as the joint development of risk management programs, indicate AMG's control over "the manner or methodology" of the treatment provided by Dr. Hawasli. Cf. *Laster*, 316 Mich App at 729.

The other facts of this case stand in further contrast to those in *Laster*, 316 Mich App 726, where this Court held that the hospital was not vicariously liable for the doctor's negligence. That case did not involve operation of a stand-alone clinic as is operated in this case by AMG. In *Laster*, the only connection between the doctor and Henry Ford Health System (HFHS) was that he had privileges at the hospital and he had to follow HFHS's on-call schedule and requirements. The defendant doctor was not bound to provide services exclusively through HFHS, he billed patients directly for his services and neither he nor his practice received any compensation from HFHS. *Id*. at 730-731.

In sum, the question of agency vis-à-vis AMG is a close one. While AMG may ultimately prevail on the question, this is a determination to be made by the fact-finder after trial.

We conclude, however, that the PSA does not create a question of fact regarding agency as to St. John Hospital because St. John Hospital is not a party to that contract, and so it cannot be bound by the PSA's terms. Although St. John Hospital and AMG are affiliated entities, "[i]t is a well-recognized principle that separate corporate entities will be respected." *Seasword v Hilti, Inc*, 449 Mich 542, 547; 537 NW2d 221 (1995). Plaintiff relies solely on the PSA to show vicarious

liability, and she has not produced other evidence indicating that St. John Hospital had any level of control over Dr. Hawasli or his practice. Accordingly, we conclude that the trial court erred by denying summary disposition to St. John Hospital of plaintiff's claims of vicarious liability.

## B. MEDICAL MALPRACTICE OR ORDINARY NEGLIGENCE

AMG also argues that the trial court erred by denying summary disposition of the claims of negligence because plaintiff's claim sound solely in medical malpractice.[6] We disagree.[7]

There are two factors that distinguish a medical malpractice claim from an ordinary negligence claim. First, medical malpractice may only occur in the course of a professional relationship. And second, a medical malpractice claim necessarily raises questions concerning medical judgment, as opposed to negligence claims, which raise questions within the common knowledge and experience of the average layperson. *Bryant v Oakpointe Villa Nursing Centre*, 471 Mich 411, 422; 684 NW2d 864 (2004). No one disputes that what occurred here took place in the course of a professional relationship. The parties do dispute whether, assuming plaintiff's allegations to be true, the claim necessitates a determination concerning medical judgment.

Put differently, we must determine whether plaintiff's lack-of-consent claim raises questions of medical judgment requiring expert standard of care testimony or, on the other hand, whether it alleges facts within the realm of a jury's common knowledge and experience. *Id*. at 423. When the reasonableness of a healthcare professionals' action may be analyzed by lay jurors in light of their common knowledge and experience, the claim is for ordinary negligence. *Id*. But, if the reasonableness of the healthcare professionals' actions can be determined by a jury only after having been presented with the standards of care as explained by experts, a medical malpractice claim is involved. *Id*.

We have reviewed Michigan caselaw involving allegations that consent was not given by the patient. With the exception of an intraoperative emergency—a circumstance that defendants do not assert were present in this case—all the cases differ from this case in one important respect. They address the question of *informed* consent, i.e., whether the physician properly provided the necessary information for a patient to understand what they were consenting to.[8] In this case,

---

[6] While St. John Hospital also makes this argument, it is entitled to summary disposition on the basis that plaintiff does not have a viable vicarious liability claim against it, as discussed. Plaintiff has abandoned any direct negligence claim against AMG and St. John Hospital pertaining to alleged failures by AMG and St. John Hospital such as to train or supervise the clinic's staff.

[7] "Whether a claim sounds in ordinary negligence or medical malpractice is a question of law that is reviewed de novo." *Trowell v Providence Hosp & Med Ctrs, Inc*, 502 Mich 509, 517; 918 NW2d 645 (2018).

[8] See *Compton v Pass*, 485 Mich 920 (2009) (the plaintiff claimed that the defendant did not inform her that she could have a sentinel node biopsy without participation in a trial led by the defendant that required removal of multiple nodes); *Paul v Lee*, 455 Mich 204, 206; 568 NW2d 510 (1999), overruled on other grounds by *Smith v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999)

plaintiff does not allege that Dr. Hawasli failed to provide her with the necessary information to obtain her informed consent. Rather, she claims that she explicitly told Dr. Hawasli that under no conditions would she agree to removal of her thyroid. "Competent patients have the right to make medical decisions including the decision to cease any medical intervention[.]" *In re AMB*, 248 Mich App 144, 198; 640 NW2d 262 (2001), citing in part *Cruzan v Director, Missouri Dep't of Health*, 497 US 261; 110 S Ct 2841; 111 L Ed 2d 224 (1980).

It is difficult to see, at least given the facts of this case, how a failure to adhere to the clear limits on surgery set by the patient requires medical judgment.[9] If a jury were to conclude that plaintiff did in fact tell Dr. Hawasli that she would not consent to removal of her thyroid, then a verdict finding ordinary negligence would not be improper.[10] If, on the other hand, the jury

---

(the plaintiff claimed that the defendant failed to inform him that vasectomy procedure might not be permanent and he should have post-surgical sperm testing to confirm sterility); *Wlosinski v Cohn*, 269 Mich App 303, 306; 269 NW2d 303 (2005) (the plaintiff claimed that the defendant failed to inform her of his success rate for the surgery); *Robins v Katz*, 151 Mich App 802, 805; 391 NW2d 495 (1986) (the plaintiff asserted that she "was not informed of the risks and complications of surgery"); *Rodgers v Syverson*, unpublished per curiam opinion of the Court of Appeals, issued September 19, 2006 (Docket No. 269283) (the plaintiff claimed that the defendant did not inform her that the surgery involved an incision in her labial/vaginal area), p 4; *Shear v Brinn*, unpublished per curiam opinion of the Court of Appeals, issued March 11, 2014 (Docket No. 314297) (the plaintiff claimed that he was not advised about the risks of the anesthesia being used or that it would be administered by a CRNA), p 1; *Conway v Benson*, unpublished per curiam opinion of the Court of Appeals, issued March 23, 2023 (Docket No. 360250) (the plaintiff claimed that the defendant did not warn him of the possible side effects of medication), p 2.

[9] We recognize that if Dr. Hawasli reasonably claimed that he had to remove the entire thyroid in order to address an intraoperative emergency or because it was a matter of life or death, then a question of medical judgment would present itself, i.e., whether such circumstances existed that would require a physician decision to remove the thyroid despite the patient's stated wishes. See *Werth v Taylor*, 190 Mich App 141, 146, 150; 475 NW2d 426 (2006) (despite the plaintiff's refusal to consent pre-operatively to any blood transfusions, the defendant gave her a transfusion during the operation when she was unconscious because it was necessary "to avoid her death" and "the law implies the consent of an unconscious patient to medical procedures needed to preserve the patient's life.") Here, as noted, no such defense is raised. The defense is straightforward, i.e., plaintiff consented explicitly or implicitly to the removal of her thyroid.

[10] See *Price v Marras*, unpublished per curiam opinion of the Court of Appeals, issued July 23, 2020 (Docket No 349162), in which the plaintiff argued that she had not consented to removal of her right ovary. However, she agreed that she told the doctor not to remove the ovary unless it was "absolutely necessary." *Id*. at 4. Because whether removal was in fact necessary required a medical analysis, the case was held to sound in medical malpractice. However, the Court noted that "[i]mportantly, plaintiff did not forbid the removal of her ovaries altogether, in which case no medical judgment whatsoever would have been necessary to find their removal contrary to plaintiff's consent," i.e., the circumstance alleged in this case. *Id*. Although not binding precedent,

concludes that plaintiff did not so advise Dr. Hawasli, then the claim based on ordinary negligence fails. However, to the degree plaintiff seeks to establish liability on the basis that Dr. Hawasli performed the surgery negligently rather than on her alleged affirmative refusal of consent, such a claim would sound in medical malpractice.[11]

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro

---

a court may consider unpublished opinions for their instructive or persuasive value. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

[11] Plaintiff's complaint also includes a claim of gross negligence, which is also premised on her allegation that Dr. Hawasli violated her express instructions to not remove her thyroid. However, plaintiff makes no attempt to address the standard for gross negligence, which is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Odom v Wayne Co*, 482 Mich 459, 469; 760 NW2d 217 (2008) (quotation marks and citation omitted). Accordingly, we agree with defendants that they are entitled to summary disposition of this claim. And while plaintiff's brief refers to Dr. Hawasli's removal of plaintiff's thyroid as a battery, her complaint does not allege battery. Such an additional claim would require an amendment of the complaint.