# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

DOE v ALPENA PUBLIC SCHOOL DISTRICT

Docket No. 165441. Argued on application for leave to appeal March 13, 2024. Decided July 29, 2024.

Minor "Jane Doe," by her next friend Georgeia Kolokithas, brought an action in the Alpena Circuit Court against the Alpena Public School District and the Alpena Board of Education, alleging that defendants had created a sexually hostile educational environment in violation of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*., by failing to respond adequately when another student, "John Roe," repeatedly subjected her to unwanted sexual contact. Defendants moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that plaintiff had failed to state a claim because a hostile-environment claim based on "student-on-student" sexual harassment is not actionable under the ELCRA and, even if it were, summary disposition would be appropriate because plaintiff failed to satisfy the elements of a hostile-environment claim. The trial court, K. Edward Black, J., granted the motion, agreeing with defendants' reasoning under both MCR 2.116(C)(8) and (10). Plaintiff appealed. The Court of Appeals held that the trial court erred to the extent it concluded summary disposition was proper under MCR 2.116(C)(8); the Court of Appeals reasoned that the *in loco parentis* doctrine permits an educational institution to be held vicariously liable under the ELCRA for student-on-student sexual harassment. But the Court of Appeals nonetheless affirmed the trial court's grant of summary disposition, concluding that the trial court correctly granted the motion under MCR 2.116(C)(10) because there was no genuine dispute of fact concerning defendants' vicarious liability for John Roe's conduct. 345 Mich App 35 (2022). Plaintiff sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant plaintiff's application for leave to appeal or take other action. 511 Mich 994 (2023).

In an opinion by Justice VIVIANO, joined by Chief Justice CLEMENT and Justices ZAHRA, WELCH, and BOLDEN, the Supreme Court, in lieu of granting leave to appeal, *held*:

The ELCRA does not provide a vicarious-liability cause of action against an educational institution for a hostile educational environment that is the result of student-on-student sexual harassment.

1. Under the ELCRA, the full and equal utilization of educational facilities without discrimination because of sex is a civil right. To effectuate this right, educational institutions are

prohibited from discriminating against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution, because of sex. Discrimination because of sex includes sexual harassment, which includes unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature when the conduct or communication has the purpose or effect of substantially interfering with an individual's employment or education or creating an intimidating, hostile, or offensive employment or educational environment.

2. The Court has not previously addressed the hostile-environment provisions of the ELCRA in the context of a claim against an educational institution for student-on-student harassment, but to establish a prima facie case of a hostile-environment claim in the employment context, an employee must establish (1) that the employee belonged to a protected group; (2) that the employee was subjected to communication or conduct on the basis of sex; (3) that the employee was subjected to unwelcome sexual conduct or communication; (4) that the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. Under the doctrine of respondeat superior, an employer is generally liable for the torts its employees commit within the scope of their employment. The respondeat superior requirement is derived from the text of MCL 37.2201(a), which defines "employer" to mean "a person that has 1 or more employees, and includes an agent of that person." Thus, the ELCRA expressly addresses an employer's vicarious liability for sexual harassment committed by its employees by defining "employer" to include both the employer and the employer's agents, and as a result, common-law agency principles can be consulted in determining the scope of the sexual-harassment provisions as applied to employees in a workplace.

3. MCL 37.2401 defines "educational institution" to include, among other things, "an agent of an educational institution." Therefore, with a hostile-educational-environment claim, just as with a hostile-work-environment claim, a plaintiff is required to establish respondeat superior. Plaintiff acknowledges that respondeat superior does not fit the circumstances here because a student is not an employee of the school. Plaintiff argues, however, that the respondeat superior requirement should be eliminated for hostile-educational-environment claims and that the *in loco parentis* doctrine should be used in its place. The Court of Appeals accepted this view and held that defendants could be held vicariously liable under the *in loco parentis* doctrine. But while the ELCRA incorporates agency and respondeat superior principles when discussing who can be liable, it does not incorporate the doctrine of *in loco parentis*. That is, the plain text of the ELCRA does not indicate that that the Legislature intended to incorporate the doctrine of *in loco parentis* in order to make schools liable for student-on-student sexual harassment. While the doctrine of *in loco parentis* may support a direct claim for ordinary negligence in an appropriate case, it is not generally considered a basis for holding a school vicariously liable for the actions of its students. The Court of Appeals erred by holding that the ELCRA provides a cause of action against an educational institution for student-on-student sexual harassment under a vicarious-liability theory.

Part III of the Court of Appeals judgment reversed, Part IV of the Court of Appeals judgment vacated, and case remanded to the Court of Appeals to determine whether the trial court correctly granted summary disposition under MCR 2.116(C)(10) of plaintiff's hostile-educational-

environment-harassment ELCRA claim under a theory of direct (as opposed to vicarious) liability, including, if necessary, whether such a claim exists under the ELCRA at all.

Justice CAVANAGH, concurring, agreed with the majority that the ELCRA does not incorporate the common-law doctrine of *in loco parentis* for the purpose of analyzing plaintiff's claims, and she agreed with the majority's decision to reverse the Court of Appeals' judgment, which relied exclusively on that vicarious-liability theory. She also agreed that the case should be remanded to the Court of Appeals. She wrote separately to make clear that plaintiff consistently stated a claim upon which relief could be granted under MCR 2.116(C)(8), necessitating the Court of Appeals' reconsideration of defendants' motion for summary disposition under MCR 2.116(C)(10). There is no dispute that under MCL 37.2103(k)(*iii*), discrimination on the basis of sex includes sexual harassment under conditions where the conduct or communication has the purpose or effect of substantially interfering with an individual's education or creating an intimidating, hostile, or offensive educational environment. It follows that educational institutions may be held directly liable when they fail to take appropriate remedial action and instead create a hostile educational environment that deprives a student of receiving the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution contrary to MCL 37.2402(a). Plaintiff alleged in her complaint that defendants had duties under the ELCRA, including the duty not to discriminate against or harass plaintiff and not to maintain a sexually hostile environment, and that defendants violated those duties when they knew of the sexual harassment and deliberately failed to prevent or to take reasonable measures to prevent further sexual assaults, thereby depriving plaintiff of her equal right to an education. Accordingly, based on the plain language of plaintiff's complaint and the language of the ELCRA, plaintiff stated a claim on which relief could be granted. A theory of liability premised on agency was not introduced until defendants argued that plaintiff had not demonstrated liability under a theory of respondeat superior in their motion for summary disposition, and the doctrine of *in loco parentis* was not mentioned until the Court of Appeals applied it, sua sponte, to conclude that plaintiff stated a claim sufficient to survive summary disposition under MCR 2.116(C)(8). Notwithstanding the Court of Appeals' error in characterizing plaintiff's claim as one under the doctrine of *in loco parentis* for the purposes of MCR 2.116(C)(8), the question remained whether the Court of Appeals' analysis under MCR 2.116(C)(10) would have been materially changed if it had considered plaintiff's claim under the direct-liability theory as opposed to a vicarious-liability theory. She concluded the analysis would have materially changed because instead of focusing on defendants' control over John Roe's actions and whether defendants imposed appropriate restrictions on what John Roe was allowed to do within the educational environment, a direct non-agency theory of liability would have focused on defendants' notice of John Roe's harassment, their responsive actions within the educational environment, and how defendants' actions impacted plaintiff.

Justice BERNSTEIN, dissenting, would have affirmed the Court of Appeals' holding that the ELCRA provides a cause of action for a hostile-educational-environment claim by a student against an educational institution for student-on-student sexual harassment. He disagreed, however, with the Court of Appeals' holding that plaintiff failed to establish a genuine issue of material fact regarding her hostile-educational-environment claim. He believed that a reasonable juror could conclude that defendants took inadequate remedial action in response to plaintiff's complaints, and he would have remanded the case to the trial court for further proceedings.

Respondeat superior is a labor-specific term that does not directly apply in the educational context. Accordingly, he would have adopted a modified standard for claims of student-on-student sexual harassment in the educational context. Given that schools exercise a degree of control over their students via the *in loco parentis* doctrine and that schools are vicariously liable for the actions of their employees, schools may be responsible for how their employees manage student behavior. And the ELCRA has implicitly incorporated the doctrine of *in loco parentis*. Under MCL 37.2402(a), the ELCRA explicitly protects students from discrimination that prevents them from receiving the full utilization of or benefit from the educational institution because of their sex. This language contemplates that schools temporarily assume the duties or functions of a parent while students are under their supervision, including ensuring that students are able to fully utilize their educational institution. Accordingly, the ELCRA's language contemplates that an educational institution could be held vicariously liable for the institution's failure to take adequate remedial measures in response to student-on-student harassment. The Court of Appeals erred, however, by affirming the trial court's grant of summary disposition to defendants under MCR 2.116(C)(10). Justice BERNSTEIN would have held that in order for a plaintiff to establish vicarious liability in the educational context, a plaintiff must show that the educational institution knew or should have known of the hostile environment and failed to take prompt and adequate remedial action. Here, the evidence, when viewed in the light most favorable to plaintiff, shows that defendants were aware of the hostile educational environment, and viewing the evidence in the light most favorable to plaintiff, reasonable minds could differ regarding whether defendants' response was appropriate. Therefore, he would have found that a genuine issue of material fact existed and that the Court of Appeals erred by granting defendants' motion for summary disposition under MCR 2.116(C)(10).

# OPINION

Chief Justice:
    Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 29, 2024

S T A T E   O F   M I C H I G A N

SUPREME COURT

JANE DOE, by next friend GEORGEIA
KOLOKITHAS,

    Plaintiff-Appellant,

v                                   No. 165441

ALPENA PUBLIC SCHOOL DISTRICT
and ALPENA BOARD OF EDUCATION,

    Defendants-Appellees.

_____

BEFORE THE ENTIRE BENCH

VIVIANO, J.

The issue in this case is whether the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*. (the ELCRA), provides a cause of action against an educational institution for student-on-student sexual harassment. The Court of Appeals held that an educational institution exercises sufficient control over its students such that it may be vicariously liable for a hostile-educational-environment-discrimination claim under the ELCRA arising from

student-on-student harassment. We find no support for that conclusion in the plain language of the ELCRA or our caselaw. For the reasons below, we reverse the Court of Appeals.

## I. FACTS AND PROCEDURAL HISTORY

John Roe and Jane Doe were fourth-grade students assigned to the same classroom at Besser Elementary, an elementary school within the defendant school district, during the 2016–2017 school year. Roe was part of the special education program. Over the course of the year, Roe repeatedly touched and interacted with Doe in a sexually inappropriate manner. At one point, Doe's mother reported the harassment to law enforcement, but no charges were brought. The school took a variety of actions in response to Roe's harassment of Doe, including suspending Roe, giving Roe a Functional Behavioral Assessment and developing a Behavior Intervention Plan, moving Roe to a different classroom than Doe, assigning Roe a different lunch period than Doe, and advising Roe not to have contact with Doe.

In mid-May 2017, Doe withdrew from Besser Elementary; she attended a private school for the remainder of fourth grade and for the entirety of her fifth-grade year. Doe then enrolled at Thunder Bay Junior High School for her sixth-grade year. Because Doe would once again be at the same school as Roe, Doe's parents met with school administrators before the start of the year to discuss ways in which the school could ensure Roe would not again harass Doe. Despite the actions taken by the school, Roe continued to harass Doe. Doe ultimately transferred to another school, and Roe was later expelled for assaulting another female student.

2

Plaintiff filed a complaint alleging a hostile environment under the ELCRA alleging, *inter alia*, that defendants allowed and failed to stop Roe's sexual harassment of Doe and that defendants did not take reasonable and appropriate action to prevent future sexual harassment by Roe. Defendants moved for summary disposition under MCR 2.116(C)(8) and (10). The trial court granted defendants' (C)(8) motion, holding that no binding caselaw has extended the ELCRA to encompass student-on-student sexual harassment. The trial court also granted defendants' (C)(10) motion, holding that even if student-on-student sexual harassment were actionable under the ELCRA, defendants' actions in response to the alleged harassment were sufficient to avoid liability. Plaintiff appealed.

The Court of Appeals affirmed in a published opinion. *Doe v Alpena Pub Sch Dist*, 345 Mich App 35; 3 NW3d 838 (2022). It first held that the trial court erred to the extent it concluded summary disposition was proper under MCR 2.116(C)(8). *Id*. at 47. The Court of Appeals reasoned that an educational institution may be held vicariously liable under the ELCRA on the basis of the doctrine of *in loco parentis*. *Id*. at 44-46.[1] However, the Court of Appeals held that the trial court correctly granted summary disposition under MCR 2.116(C)(10) "because plaintiff failed to show a genuine dispute of fact about whether defendants took prompt and appropriate remedial action." *Id*. at 50.

This appeal followed. Plaintiff sought leave to appeal from this Court seeking reversal of the trial court's grant of defendants' motion for summary disposition under

---

[1] The Court of Appeals did not address plaintiff's alternative theory that she may assert a claim of direct liability against defendants under the ELCRA for creating a hostile educational environment.

MCR 2.116(C)(10).  We directed oral argument on the application pursuant to MCR 7.305(H)(1) and instructed the parties to "file supplemental briefs in accordance with MCR 7.312(E), addressing: (1) whether the plaintiff stated a cause of action under the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*., for student-on-student sexual harassment; and (2) if so, whether the plaintiff established a genuine issue of material fact as to that claim." *Doe v Alpena Pub Sch Dist*, 511 Mich 994, 994 (2023).

## II.  STANDARD OF REVIEW AND RULES OF INTERPRETATION

"[W]e review de novo the interpretation of statutes."  *Clam Lake Twp v Dep't of Licensing and Regulatory Affairs*, 500 Mich 362, 373; 902 NW2d 293 (2017).  Similarly, "[w]e review de novo a trial court's determination regarding a motion for summary disposition." *Id*. at 372 (quotation marks and citation omitted).

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019) (emphasis omitted).[2]  MCR 2.116(C)(8) provides a basis for summary disposition when "[t]he opposing party has failed to state a claim on which relief can be granted."  The rule, "therefore, determines whether the opposing party's pleadings allege a prima facie case." *Radtke v Everett*, 442 Mich 368, 373; 501 NW2d 155 (1993).  In undertaking this inquiry, "the court does not act as a factfinder, but accepts as true all well-pleaded facts." *Id*. (quotation marks and citation omitted).

---

[2] The Court of Appeals reversed the trial court's denial of summary disposition under MCR 2.116(C)(8), and defendants did not cross-appeal that ruling in this Court.  But "a cross appeal [is] not necessary to urge an 'alternative ground for affirmance.' " *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994).

## III. ANALYSIS

Under the ELCRA, Michigan law recognizes that the full and equal utilization of educational facilities without discrimination because of sex is a civil right. MCL 37.2102(1). To effectuate this right, educational institutions are prohibited from "[d]iscriminat[ing] against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex . . . ." MCL 37.2402(a).[3] Under the ELCRA, "[d]iscrimination because of sex includes sexual harassment," MCL 37.2103(k), which is specifically defined to include:

> unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> (*i*) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, . . . or . . . education . . . .
>
> (*ii*) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment . . . or . . . education . . . .
>
> (*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . or . . . education . . . or creating an intimidating, hostile, or offensive employment . . . [or] educational . . . environment. [MCL 37.2103(k).][4]

---

[3] Under the statute, "educational institution" is defined as "a public or private institution, or a separate school or department thereof, and includes an . . . elementary or secondary school . . . [and] local school system . . . ; and [it] includes an agent of an educational institution." MCL 37.2401. It is undisputed that defendants are educational institutions for purposes of the ELCRA.

[4] MCL 37.2103 was amended effective June 15, 2023. Previously, discrimination because of sex and sexual harassment were defined under MCL 37.2103(h). Because those definitions appear in the general definitional section, they apply to all sexual harassment claims made under the ELCRA.

5

Plaintiff has alleged a violation of MCL 37.2402(a), claiming she was subjected to a hostile educational environment under MCL 37.2103(k)(*iii*). When a similar lawsuit is filed against an employer alleging a violation of MCL 37.2202, this particular type of sexual harassment is commonly referred to as "hostile-work-environment harassment."[5] We have not had occasion to interpret the hostile-environment-harassment provisions of the ELCRA in the context of a student-on-student claim against an educational institution; however, we have had numerous opportunities to interpret this provision in the context of a hostile-work-environment claim, i.e., a claim against an employer. See MCL 37.2202.

In *Radtke*, we held that in order to establish a prima facie case of a hostile-work-environment claim under the ELCRA, an employee must establish the following elements:

> (1) the employee belonged to a protected group;
>
> (2) the employee was subjected to communication or conduct on the basis of sex;
>
> (3) the employee was subjected to unwelcome sexual conduct or communication;
>
> (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and
>
> (5) respondeat superior. [*Radtke*, 442 Mich at 382-383.]

At issue here is the fifth element, i.e., respondeat superior. Under the doctrine of respondeat superior, "[a]n employer is generally liable for the torts its employees commit within the scope of their employment." *Hamed v Wayne Co*, 490 Mich 1, 10-11; 803

---

[5] *Radtke*, 442 Mich at 381. By contrast, "[t]he conduct defined in [MCL 37.2103(k)(*i*) and (*ii*)] is usually referred to as quid pro quo sexual harassment." *Id*. at 381 n 16.

NW2d 237 (2011). Significantly, the respondeat superior requirement is derived from the text of the ELCRA itself. Specifically, "employer," as used in Article 2 of the ELCRA, "means a person that has 1 or more employees, and *includes an agent* of that person." MCL 37.2201(a) (emphasis added). Thus, "[t]he statute expressly addresses an employer's vicarious liability for sexual harassment committed by its employees by defining 'employer' to include both the employer and the employer's agents." *Chambers v Trettco, Inc*, 463 Mich 297, 310; 614 NW2d 910 (2000), citing MCL 37.2201(a). As a result, we have looked to common-law agency principles in determining the scope of the sexual harassment provisions of the act as applied to employees in a workplace. See *Chambers*, 463 Mich at 311 ("Because [MCL 37.2201(a)] expressly defines 'employer' to include agents, we rely on common-law agency principles in determining when an employer is liable for sexual harassment committed by its employees.").[6] Ultimately, "whether analyzing quid pro quo harassment or hostile environment harassment, the question is always whether it can be fairly said that the employer committed the violation—either directly or through an agent." *Id*. at 312.

---

[6] See also *Hamed*, 490 Mich at 20 (observing that in *Chambers*, "we determined that the [ELCRA] specifically incorporates common-law principles of respondeat superior" and holding that "if a defendant is not vicariously liable for the acts of its agent under traditional principles of respondeat superior, the plaintiff's claim under the [ELCRA] fails as a matter of law"); *Meritor Savings Bank, FSB v Vinson*, 477 US 57, 72; 106 S Ct 2399; 91 L Ed 2d 49 (1986) (agreeing with the Equal Employment Opportunity Commission that Congress wanted courts to look to agency principles for guidance in this area and holding that "[w]hile such common-law principles may not be transferable in all their particulars to Title VII, Congress' decision to define 'employer' to include any 'agent' of an employer, 42 U. S. C. § 2000e(b), surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible").

MCL 37.2401 defines "educational institution" to include, among other things, "an agent of an educational institution." Therefore, with a hostile-educational-environment claim, just as with a hostile-work-environment claim, we start from the premise that a plaintiff is required to establish respondeat superior. Plaintiff does not assert that Roe was acting as an agent or servant of defendants. Indeed, plaintiff acknowledges that respondeat superior does not fit the circumstances here because a student is not an employee of the school. Instead, plaintiff argues that the respondeat superior requirement should be eliminated for hostile-educational-environment claims because it is too narrow. In its place, plaintiff urges that we adopt another common-law doctrine, *in loco parentis*.[7]

The Court of Appeals accepted this view, holding that defendants may be held vicariously liable under the *in loco parentis* doctrine. The Court of Appeals began its analysis by observing that respondeat superior liability is predicated on an employer's right to control the activities of its employees. *Doe*, 345 Mich App at 44.[8] Next, the Court of

---

[7] The phrase *in loco parentis* "literally means in the place of a parent." 67A CJS, Parent and Child, § 356 (May 2024 update). A person *in loco parentis* is "one who has assumed the status and obligations of a parent without a formal adoption." *Id*. (boldface omitted). We have recognized that "[a]t least in a limited sense the relation of a teacher to a pupil is that of one in loco parentis." *Gaincott v Davis*, 281 Mich 515, 518; 275 NW 229 (1937). Indeed, this common-law doctrine arose in the educational context. See 1 Blackstone, Commentaries on the Laws of England (3d ed), p 453 ("[A parent] may also delegate part of his parental authority, during his life, to the tutor or schoolmaster of his child; who is then in loco parentis, and has such a portion of the power of the parent committed to his charge, viz. that of restraint and correction, as may be necessary to answer the purposes for which he is employed"). See also 2 Kent, Commentaries on American Law (1827), p 170 ("The power allowed by law to the parent over the person of the child, may be delegated to a tutor or instructor, the better to accomplish the purposes of education.").

[8] See also *Nichol v Billot*, 406 Mich 284, 296; 279 NW2d 761 (1979) (" 'The "servant" concept at common law performed one main function: to delimit the scope of a master's vicarious tort liability. This tort liability arose out of detailed activities carried on by the

8

Appeals observed that "schools exercise some amount of control over students via their responsibility to act *in loco parentis*." *Id*. at 45. The Court of Appeals also noted that schools have a responsibility to enforce the disciplinary provisions of the Revised School Code, MCL 380.1 *et seq.* See *id*. at 45-46, citing MCL 380.1310(1) and MCL 380.1311(1). Accordingly, the Court of Appeals held that "schools do exercise a measure of control over students such that they may be vicariously liable for hostile educational environment discrimination arising from student-on-student harassment." *Id*. at 6.

We disagree with the Court of Appeals' conclusion that having some degree of control over a student is sufficient to impute ELCRA liability for a hostile-educational-environment-harassment claim involving student-on-student conduct. Questions regarding the scope of liability under the ELCRA must be answered in relation to its plain text. As we often state, "[w]e interpret statutes to discern and give effect to the Legislature's intent, and in doing so we focus on the statute's text." *Clam Lake Twp*, 500 Mich at 373. See also *People v Smith*, 496 Mich 133, 138; 852 NW2d 127, 131 (2014) ("The words of a statute are the most reliable indicator of the Legislature's intent and should be interpreted according to their ordinary meaning and the context within which they are used in the statute.").

As we have discussed in our previous decisions, the ELCRA specifically incorporated common-law principles of respondeat superior by including agents in the definitions of the individuals and entities subject to the act. See *Chambers*, 463 Mich

servant, resulting in some kind of harm to a third person. The extent to which the employer had a right to control these detailed activities was thus highly relevant to the question whether the employer ought to be legally liable for them.' "), quoting 1B Larson's Workmen's Compensation Law, § 43.42, pp 8-10, 8-11.

9

at 310; *Hamed*, 490 Mich at 20. While the ELCRA incorporates agency and respondeat superior principles when discussing who can be liable, it does not incorporate the doctrine of *in loco parentis*. Neither plaintiff nor the Court of Appeals has provided a textual link that would allow us to import other common-law doctrines, such as *in loco parentis*, into the act. The ELCRA does not reference the *in loco parentis* doctrine or otherwise indicate broadly and outside the agency context that all individuals or entities who have some degree of control over a third party are vicariously liable for that party's conduct if it violates the sexual harassment provisions of the ELCRA.

We have recognized that a claim for ordinary negligence against a teacher may arise based on the *in loco parentis* doctrine. In *Gaincott v Davis*, 281 Mich 515; 275 NW 229 (1937), the plaintiff alleged that her teacher was negligent after the plaintiff slipped and injured herself while caring for plants at the instruction of her teacher. *Id*. at 516-517. We held that a teacher is bound to use reasonable care in the care and custody of a pupil. *Id*. at 519.[9]

---

[9] See also *Plumley v Klein*, 388 Mich 1, 8; 199 NW2d 169 (1972) (abrogating parental immunity in negligence actions and holding that "[a] child may maintain a lawsuit against his parent for injuries suffered as a result of the alleged ordinary negligence of the parent" unless "(1) . . . the alleged negligent act involves an exercise of reasonable parental authority over the child; [or] (2) . . . the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care"). We have also held that a person may seek declaratory and injunctive relief against a school district if he or she has a substantial interest in the enforcement of the disciplinary provisions of the Revised School Code that is detrimentally affected in a manner distinct from that of the general public if the statutes are not enforced. See *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 373-378; 792 NW2d 686 (2010).

*Gaincott* thus involved a direct action by a student against a teacher based upon the teacher's alleged negligence under an *in loco parentis* theory.[10]

While the doctrine of *in loco parentis* may support a direct claim for ordinary negligence in an appropriate case, it is not generally considered a basis for holding a school vicariously liable for the actions of its students. See *Moore v Portland Pub Sch*, 328 Or App 391, 408; 537 P3d 544 (2023) ("Our cases addressing the *in loco parentis* relationship between schools and their students have treated the relationship as one that imposes on the school district a duty to protect and safeguard students, not one that would make a school district vicariously liable to school employees for the torts of students."). In any event, the question in this case is not whether to recognize a new cause of action or doctrine of vicarious liability under the common law. Instead, this is a straightforward question of statutory interpretation. After carefully analyzing the text of the ELCRA, we see no indication that the Legislature intended to incorporate the doctrine of *in loco parentis* in order to make schools liable for student-on-student sexual harassment.

## IV. CONCLUSION

Similar to our conclusion in *Chambers*, we once again "find no statutory basis for singling out sexual harassment cases, as opposed to other classes of prohibited discrimination, for the application of a new rule of vicarious liability." *Chambers*, 463 Mich at 316. Accordingly, we hold that the ELCRA does not provide a vicarious-liability cause of action against an educational institution for a hostile educational environment that

---

[10] We note that a later Court of Appeals case held that a teacher cannot be liable in a direct negligence action under an *in loco parentis* theory for student-on-student behavior unless the teacher was present to observe and control the behavior. *Cook v Bennett*, 94 Mich App 93; 288 NW2d 609 (1980).

is the result of student-on-student sexual harassment.[11]  For the reasons stated above, we reverse Part III of the Court of Appeals opinion, vacate as unnecessary Part IV of the opinion, and remand this case to the Court of Appeals to consider whether the trial court correctly granted summary disposition under MCR 2.116(C)(10) of plaintiff's hostile-educational-environment-harassment claim under a theory of direct (as opposed to vicarious) liability under the ELCRA, including, if necessary, whether such a claim exists under the ELCRA at all.

David F. Viviano
Elizabeth T. Clement
Brian K. Zahra
Elizabeth M. Welch
Kyra H. Bolden

---

[11] In light of our holding that summary disposition of this claim was proper under MCR 2.116(C)(8), we need not reach the issue of whether summary disposition of this claim was appropriate under MCR 2.116(C)(10).

JANE DOE, by Next Friend GEORGEIA
KOLOKITHAS,

      Plaintiff-Appellant,

v                                           No. 165441

ALPENA PUBLIC SCHOOL DISTRICT
and ALPENA BOARD OF EDUCATION,

      Defendants-Appellees.

_____

CAVANAGH, J. (*concurring*).

I agree with the majority that the Elliott-Larsen Civil Rights Act (the ELCRA),

MCL 37.2101 *et seq*., does not incorporate the common-law doctrine of *in loco parentis*

for the purpose of analyzing plaintiff's claims. As a result, I agree with the majority's

decision to reverse the Court of Appeals' judgment, which relied exclusively on this theory

of vicarious liability, and to remand this matter to that Court. I write separately, however,

to make clear that plaintiff has consistently stated a claim upon which relief could be

granted under MCR 2.116(C)(8), and this necessitates the Court of Appeals'

reconsideration of defendants' motion for summary disposition under MCR

2.116(C)(10).

In deciding whether plaintiff has stated a claim upon which relief could be granted

under MCR 2.116(C)(8), we first analyze the statutory basis for plaintiff's claims. When

interpreting a statute such as the ELCRA, "[t]he principal goal . . . is to give effect to the

Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Treasury*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). There is no dispute that defendants are educational institutions for the purposes of the ELCRA, MCL 37.2401, or that MCL 37.2402(a) requires that an educational institution not "[d]iscriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex . . . ." Further, there is no dispute that discrimination on the basis of sex includes sexual harassment under conditions where "[t]he conduct or communication has the purpose or effect of substantially interfering with an individual's . . . education . . . , or creating an intimidating, hostile, or offensive . . . educational . . . environment." MCL 37.2103(k)(*iii*). Thus, it follows that educational institutions may be held directly liable when they fail to take appropriate remedial action and instead create a hostile educational environment that deprives a student of receiving "the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution . . . ." MCL 37.2402(a).

In other words, the plain and ordinary language of ELCRA explicitly states that an educational institution *itself* may not deny a student the full utilization of, or benefit from, the educational institution by allowing a hostile educational environment because of its own actions. This interpretation is consistent with the well-established rule that the ELCRA, as a remedial statute, should be liberally construed to advance the act's goal of remedying discrimination in educational institutions. See *Eide v Kelsey-Hayes Co*, 431 Mich 26, 34; 427 NW2d 488 (1988).

2

In keeping with that interpretation, plaintiff alleged in her complaint that defendants "had duties under the [ELCRA], including the duty not to discriminate against or harass [plaintiff] and not to maintain a sexually hostile environment." Further, she alleged that defendants "violated those duties . . . when they knew of the sexual harassment by John Roe—thereby creating and maintaining a sexually hostile environment—and deliberately failed to prevent or to take reasonable measures to prevent further sexual assaults and thereby deprived [p]laintiff of her equal right to an education." Thus, based on the plain language of plaintiff's complaint and the language of the ELCRA above, plaintiff stated a claim on which relief could be granted.

Plaintiff continued to advance this direct, non-agency, theory of liability in the lower courts, and a theory of liability premised on agency was not introduced until defendants argued that plaintiff had not demonstrated liability under a theory of respondeat superior in their motion for summary disposition. On appeal in the Court of Appeals, plaintiff continued to argue that this was a case of first impression in which she had asserted a claim of direct liability against defendants, and defendants continued to argue that plaintiff had not demonstrated the elements for respondeat superior. Importantly, neither party introduced the doctrine of *in loco parentis*. In fact, the doctrine of *in loco parentis* was never mentioned in this litigation until the Court of Appeals applied it, sua sponte, to conclude that plaintiff stated a claim sufficient to survive summary disposition under MCR 2.116(C)(8). As explained by the majority of this Court, that was in error.

Notwithstanding the Court of Appeals' error in characterizing plaintiff's claim as one under the doctrine of *in loco parentis* for the purposes of MCR 2.116(C)(8), the

3

question remains whether the Court of Appeals' analysis under MCR 2.116(C)(10) would have been materially changed if it had considered plaintiff's claim under the direct-liability theory as opposed to a vicarious-liability theory.  I think it would.  That is because a claim for vicarious liability is premised on an "indirect responsibility imposed by operation of law," *Theophelis v Lansing Gen Hosp*, 430 Mich 473, 483; 424 NW2d 478 (1988) (opinion by GRIFFIN, J.), and this doctrine most commonly applies to an employer's responsibility for certain acts of its employees, see *Hamed v Wayne Co*, 490 Mich 1, 11-12; 803 NW2d 237 (2011).  Instead of focusing on defendants' control over John Roe's actions, and whether defendants imposed appropriate restrictions on what John Roe was allowed to do within the educational environment, a direct non-agency theory of liability would require a focus on defendants' notice of John Roe's harassment, their responsive actions within the educational environment, and how defendant's actions impacted plaintiff.  See, e.g., *Laster v Henry Ford Health Sys*, 316 Mich App 726, 735; 892 NW2d 442 (2016) ("In an agency relationship, it is the power or ability of the principal to control the agent that justifies the imposition of vicarious liability."); *Chambers v Trettco, Inc*, 463 Mich 297, 312; 614 NW2d 910 (2000) (noting the different standards for evaluating a hostile-work-environment claim depending on whether the employer committed the violation "directly or through an agent").  Simply put, when correctly understanding plaintiff's complaint against defendants under a theory of direct liability for defendants' actions solely, the focus of the evidentiary standard would shift from John Roe as an agent, to the plaintiff's right to the full utilization of, or benefit from, the educational environment.

In sum, I agree with the majority's decision to reverse the Court of Appeals' judgment and remand this matter to that Court. I concur because this Court's decision necessitates a reconsideration of defendants' motion for summary disposition under MCR 2.116(C)(10) with the understanding that plaintiff has stated a claim for direct liability upon which relief can be granted by the ELCRA.

Megan K. Cavanagh

STATE OF MICHIGAN

SUPREME COURT

JANE DOE, by Next Friend GEORGEIA
KOLOKITHAS,

      Plaintiff-Appellant,

v                                     No. 165441

ALPENA PUBLIC SCHOOL DISTRICT
and ALPENA BOARD OF EDUCATION,

      Defendants-Appellees.

_____

BERNSTEIN, J. (*dissenting*).

I respectfully dissent from the majority opinion because I believe that the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*., provides a cause of action for a hostile-educational-environment claim by a student against an educational institution for student-on-student sexual harassment.[1] I would therefore affirm the Court of Appeals' holding on that issue. However, I disagree with the Court of Appeals' holding that plaintiff failed to establish a genuine issue of material fact regarding her hostile-educational-environment claim. On this record, I believe that a reasonable juror could conclude that

_____

[1] The majority "remand[s] this case to the Court of Appeals to consider whether the trial court correctly granted summary disposition" of plaintiff's hostile-educational-environment claim "under a theory of direct (as opposed to vicarious) liability under the ELCRA . . . ." While I do not disagree that the ELCRA may also provide a direct cause of action against defendants for creating a hostile educational environment, I think that the Court of Appeals' analysis using the doctrine of *in loco parentis* is a better pathway to address plaintiff's claims for the reasons discussed below.

defendants took inadequate remedial action in response to plaintiff's complaints, and I would therefore remand this case to the trial court for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

During the 2016–2017 school year, John Roe[2] and Jane Doe were both fourth-grade students in the same classroom at Besser Elementary School (Besser) in the Alpena Public School District. Jane reported several instances throughout the school year of repeated touching and inappropriate sexual interactions with John. Jane informed school officials that, during the first incident, John gave her an unwanted hug and "humped" her three times. John was suspended for three days as a result. During the second incident, John approached Jane, "tickled her up around her chest near her breast area and scratched her," and "reached down to her private area (vaginal) and began tickling it over her clothes." Jane informed school officials of this incident and school officials observed scratch marks on Jane's chest. John was suspended for eight days as a result. School administrators also sent John's parents a letter informing them that he was to have no contact with Jane. When John came back to school after his suspension, he was assigned to a different fourth-grade class away from Jane and had separate lunch periods from her. Jane later transferred to a different elementary school. Plaintiff, Jane's mother,[3] also alleged that several other young

---

[2] John had a recognized speech and language disorder that affected his ability to communicate. John was placed on an individualized education plan and received special education services, including an instructional aide.

[3] Jane brought this action through her mother, who was appointed to serve as her next friend to act for her benefit in these proceedings. Because Jane's mother is acting for Jane's benefit in the handling of this action, I refer to Jane's mother as "plaintiff" in this opinion.

girls reported being sexually harassed by John before he began harassing Jane, but that school administrators only took action after the first incident involving John and Jane.

In 2018, John and Jane both attended Thunder Bay Junior High School (Thunder Bay) for sixth grade. Before the school year began, plaintiff's lawyer sent Thunder Bay a letter stating that Jane was to have no contact with John. The principal at Thunder Bay also met with plaintiff before the school year began and reassured her that John and Jane would have no contact, John and Jane would not ride the same bus to school, and John's instructional aide would monitor him and be present with him at all times. However, on the first day of school, Jane informed school administrators that John was on her school bus and did "this weird . . . dance in front of the aisle" while yelling and pointing at her. Jane also saw John in the hallways between classes with and without his aide, and John approached Jane when his aide was not present. School officials assigned Jane to a different bus, but then put Jane on her original bus and reassigned John to a different bus, and stated that John's aide knew to take him on a different route in between classes to avoid any interaction with Jane. John's aide later testified that Thunder Bay never provided her with any such instructions. Jane ultimately transferred to a private school out of the Alpena Public School District.

Plaintiff filed a complaint in this case alleging that defendants failed to take reasonable measures to prevent the harassment of her daughter by another student, thereby creating a hostile educational environment. Defendants filed motions for summary disposition under MCR 2.116(C)(8) and (C)(10), which the trial court granted. The Court of Appeals reversed the trial court's decision regarding defendants' motion for summary disposition under MCR 2.116(C)(8). *Doe v Alpena Pub Sch Dist*, 345 Mich App 35, 47; 3

3

NW3d 838 (2022). The Court of Appeals held that the trial court erred by finding that student-on-student sexual harassment claims were not actionable under the ELCRA. *Id*. But the Court of Appeals ultimately affirmed the trial court's decision, concluding that the trial court did not err by granting summary disposition to defendants under MCR 2.116(C)(10) because there was no genuine issue of material fact that defendants' remedial actions in response to the alleged conduct were adequate. *Id*. at 50. Plaintiff sought leave to appeal before this Court. We granted oral argument on the application to address "(1) whether the plaintiff stated a cause of action under the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*., for student-on-student sexual harassment; and (2) if so, whether the plaintiff established a genuine issue of material fact as to that claim." *Doe v Alpena Pub Sch Dist*, 511 Mich 994 (2023).

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim, and the trial court must accept the factual allegations in the pleadings as true. *Id*. at 159-160. A motion under MCR 2.116(C)(8) may be granted only "when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. at 160. On the other hand, a motion for summary disposition under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *Id*. This motion is properly granted if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a

4

motion for summary disposition under MCR 2.116(C)(10), the reviewing court must consider the evidence in the light most favorable to the opposing party. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

In addition, this Court reviews questions of statutory interpretation de novo. *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 410; 987 NW2d 501 (2022).

## III. MCR 2.116(C)(8)

The Court of Appeals reversed the trial court's decision granting defendants' motion for summary disposition under MCR 2.116(C)(8) and held that a hostile-educational-environment claim based on student-on-student sexual harassment is actionable under the ELCRA. I agree with the Court of Appeals and would affirm on this issue.

The ELCRA prohibits sex-based discrimination by educational institutions. Specifically, MCL 37.2402(a) provides, in part, that an educational institution shall not:

> Discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origin, [or] sex . . . .

MCL 37.2401 defines "educational institution" as:

> a public or private institution, or a separate school or department thereof, and includes an academy, college, elementary or secondary school, extension course, kindergarten, nursery, local school system, university, or a business, nursing, professional, secretarial, technical, or vocational school; and includes an agent of an educational institution.

While the ELCRA does not define the word "sex," this Court has recognized that "[s]exual harassment is merely a subset of sexual discrimination." *Koester v Novi*, 458 Mich 1, 11;

5

580 NW2d 835 (1998). This is consistent with MCL 37.2103 of the ELCRA, which provides, in part:

(k) *Discrimination because of sex includes sexual harassment.* Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

(*i*) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.

(*ii*) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.

(*iii*) The conduct or communication has the purpose or effect of *substantially interfering with an individual's* employment, public accommodations or public services, *education*, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, *educational*, or housing environment. [Emphasis added.]

Plaintiff raised a sexual harassment claim under MCL 37.2103(k)(*iii*), referred to as the hostile-work-environment provision. While this Court has not addressed this type of claim in the context of a claim against an educational institution, we have interpreted this provision in the context of a claim against an employer. In *Radtke v Everett*, 442 Mich 368, 382-383; 501 NW2d 155 (1993), this Court outlined a standard by which an employee can establish a hostile-work-environment claim. An employee must establish by a preponderance of the evidence that:

(1) the employee belonged to a protected group;

(2) the employee was subjected to communication or conduct on the basis of sex;

(3) the employee was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) respondeat superior. [*Id.*, citing MCL 37.2202(1)(a).]

At issue here is the fifth element of the *Radtke* standard: respondeat superior. Respondeat superior is a legal doctrine under which an employer can be held accountable for negligence committed by its employee or agent. "Under the doctrine of respondeat superior, the general rule is that an employer is not liable for the torts intentionally or recklessly committed by an employee when those torts are beyond the scope of the employer's business." *Zsigo v Hurley Med Ctr*, 475 Mich 215, 221; 716 NW2d 220 (2006). Because employers exercise some measure of control over their employees' conduct, employers may be liable for some actions by their employees. See *Hamed v Wayne Co*, 490 Mich 1, 10-11; 803 NW2d 237 (2011). Under the respondeat superior element for a hostile-work-environment claim, "an employer may avoid liability if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment." *Radtke*, 442 Mich at 396 (quotation marks and citation omitted).

But respondeat superior is a labor-specific term that does not directly apply in the educational context. As a result, plaintiff argued that this Court should, like the Court of Appeals, adopt a modified version of the *Radtke* standard in the educational setting. Plaintiff specifically asserts that *Radtke*'s fifth element of respondeat superior should be replaced with the doctrine of *in loco parentis* for claims of student-on-student sexual

7

harassment. *In loco parentis* translates to "in the place of parents." *Merriam-Webster's Collegiate Dictionary* (11th ed). The doctrine of *in loco parentis* is generally understood to refer to a temporary assumption of the duties, character, or function of a parent. See *Mayberry v Pryor*, 422 Mich 579, 584; 374 NW2d 683 (1985); see also *Mahanoy Area Sch Dist v BL*, 594 US 180, 189; 141 S Ct 2038; 210 L Ed 2d 403 (2021) ("The doctrine of *in loco parentis* treats school administrators as standing in the place of students' parents under circumstances where the children's actual parents cannot protect, guide, and discipline them.").

I agree with the Court of Appeals and plaintiff and would adopt this modified *Radkte* standard for claims of student-on-student sexual harassment in the educational context. Generally, the relationship between an employer and an employee and that between a school and its students share the same principles. See, e.g., *Davis v Monroe Co Bd of Ed*, 526 US 629, 650-652; 119 S Ct 1661; 143 L Ed 2d 839 (1999). Although a school's control over its students differs from an employer's control over its employees, a school arguably exercises *more* control over the conduct of its students while they are on school grounds or involved in school activities than an employer exercises over its employees.[4] See *id*. at 646. Michigan law also recognizes that schools exercise some control over their students via the *in loco parentis* doctrine and that a claim for ordinary negligence may be based on

---

[4] In my opinion, the majority's conclusion seems backward in this respect. The majority would allow an employer to be liable for an employee's actions, where an employer exercises a moderate amount of control over its employees, but would *not* allow a school to be held liable for the actions of its students, where school administrators exercise a large amount of control over student conduct and behavior.

this doctrine. *Gaincott v Davis*, 281 Mich 515, 518; 275 NW 229 (1937) ("At least in a limited sense the relation of a teacher to a pupil is that of one in loco parentis.").

Given that schools exercise a degree of control over their students via the *in loco parentis* doctrine, *id.*, and that schools are vicariously liable for the actions of their employees, *Hamed*, 490 Mich at 10-11, I believe that schools may be responsible for how their employees manage student behavior. The majority disagrees, holding that because the ELCRA itself does not either specifically reference the doctrine of *in loco parentis* or more generally indicate that individuals or entities that have some control over a third party may be vicariously liable for that party's conduct, a cause of action does not exist. But the ELCRA itself also does not mention the doctrine of respondeat superior, and merely discusses general agency principles in defining the term "employer." MCL 37.2201 (defining "employer" as "a person that has 1 or more employees, and includes an agent of that person"). In addition, as stated above, this Court has recognized that schools have some control over their students via the *in loco parentis* doctrine. *Gaincott*, 281 Mich at 518. Given this Court's recognition that schools have some control over their students, it is unclear why a modified *Radtke* standard should not be adopted here, due to the similar work that both respondeat superior and the *in loco parentis* doctrine accomplish in terms of establishing vicarious liability.

The majority highlights the fact that this Court has recognized that the ELCRA has incorporated the common-law doctrine of respondeat superior by explicitly including agents in its definitions of individuals subject to the act, but has not similarly recognized the doctrine of *in loco parentis*. See *Chambers v Trettco, Inc*, 463 Mich 297, 310; 614 NW2d 910 (2000), citing MCL 37.2201(a). However, I believe that the ELCRA has

9

implicitly incorporated the doctrine of *in loco parentis*. As discussed above, the doctrine is generally understood to include the temporary assumption of the duties, character, or function of a parent. See *Mayberry*, 422 Mich at 584. The ELCRA explicitly protects students from discrimination that prevents them from receiving the "full utilization of or benefit from the [educational] institution" because of their sex. MCL 37.2402(a). I think that this language contemplates that schools temporarily assume the duties or functions of a parent while students are under their supervision. Ensuring that students are educated in a manner that allows them to fully utilize their respective educational institutions is in part an assumption of the duties, character, or function of a parent. In addition, parental duties also involve supervising and monitoring children. A student may be prevented from fully utilizing or benefiting from their educational institution because of that educational institution's failure to properly supervise other students through their temporary assumption of parental duties. I believe that the ELCRA's language contemplates that an educational institution could be held vicariously liable for the institution's failure to take adequate remedial measures under these circumstances.[5]

Further, in concluding that the doctrine of *in loco parentis* does not provide a basis for holding a school vicariously liable for the actions of its students, the majority relies solely upon an out of state case from the Court of Appeals of Oregon. See *Moore v*

---

[5] Michigan law also recognizes that a school has the authority to discipline students for student-on-student sexual harassment. For example, the Revised School Code states that, when a student commits a criminal sexual assault against another student, the school "may authorize or order . . . suspension or expulsion from school . . . ." MCL 380.1311(1). In addition, a school may also exercise "restorative practices" to "repair[] the harm to the victim and the school community caused by a pupil's misconduct." MCL 380.1310c(3)(b).

*Portland Pub Sch*, 328 Or App 391, 408; 537 P3d 544 (2023). The majority cannot cite any relevant caselaw from this Court on this issue because none exists. However, I think that caselaw from the Eastern District of Michigan interpreting the ELCRA and caselaw from other states is more persuasive and cuts against the majority's position. In *Williams v Port Huron Area Sch Dist Bd of Ed*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued March 30, 2010 (Case No. 06-14556), rev'd on other grounds *Williams v Port Huron Sch Dist*, 455 Fed Appx 612 (CA 6, 2012) (Table), the Eastern District addressed "whether a civil rights claim is stated under the ELCRA for student on student racial harassment." *Id*. at 11. In addressing that question, the *Williams* court noted that a school's vicarious liability for student-on-student sexual harassment could be established using the hostile-work-environment framework. *Id*. at 14. Other states have similarly concluded that their respective state civil rights acts provide for a cause of action against a school district for student-on-student sexual harassment. See, e.g., *Doe v Kansas City, Missouri Sch Dist*, 372 SW3d 43, 54 (Mo App, 2012); *LW v Toms River Regional Sch Bd of Ed*, 189 NJ 381, 389-390; 915 A2d 535 (2007); *Washington v Pierce*, 179 Vt 318, 326; 2005 VT 125; 895 A2d 173 (2005).

Based on the above, I would conclude that schools have control over and responsibility for their students, such that schools can be held vicariously liable for a hostile educational environment created by student-on-student sexual harassment. I would therefore affirm the Court of Appeals' conclusion recognizing a cause of action under the ELCRA for such claims.

11

## IV. MCR 2.116(C)(10)

Because the majority concludes that an educational institution cannot be vicariously liable for student-on-student harassment under the ELCRA, it does not address the trial court's decision granting defendants' motion for summary disposition under MCR 2.116(C)(10). Because I disagree with the majority's conclusion and would instead hold that the ELCRA recognizes such a claim, I would address this second issue and conclude that the Court of Appeals erred by affirming the trial court's grant of summary disposition to defendants under MCR 2.116(C)(10).

I believe that there is a genuine issue of material fact regarding the sufficiency of defendants' response to the incidents at issue. I would hold that, in order for a plaintiff to establish the fifth element of *Radtke* in the educational context, a plaintiff must show that the educational institution knew or should have known of the hostile environment and failed to take prompt and adequate remedial action. Here, the evidence, when viewed in the light most favorable to plaintiff, shows that defendants were aware of the hostile educational environment. Defendants arguably took some action here, such as suspending John several times and discussing the situation with his parents. But I believe that plaintiff established that there is a question of fact regarding whether defendants took prompt and *appropriate* remedial action here. Plaintiff alleges that John inappropriately touched and sexually assaulted several other young girls at Besser and was only disciplined with a brief suspension from school after the first incident with Jane. John sexually assaulted Jane on two separate occasions and was only disciplined with a brief suspension. And when John and Jane began attending Thunder Bay together, they were on the same bus on the first day of school, John's aide was not informed of any plan to keep the two separated, John and

12

Jane saw each other on multiple occasions at school, and John approached Jane and tried to speak to her when his aide was not present. Viewing the evidence in the light most favorable to plaintiff, I think that reasonable minds could differ regarding whether defendants' response was appropriate. Plaintiff provided specific facts that could demonstrate that defendants' remedial actions were insufficient. Therefore, I would find that a genuine issue of material fact exists, and that the Court of Appeals erred by granting defendants' motion for summary disposition under MCR 2.116(C)(10). I would remand this case to the trial court for further proceedings.

## V. CONCLUSION

I disagree with the majority and would conclude that the ELCRA provides a cause of action for a hostile-educational-environment claim by a student against an educational institution for student-on-student sexual harassment. As a result, I would affirm the Court of Appeals' holding on the existence of such a claim, reverse the Court of Appeals' holding that plaintiff failed to establish a genuine issue of material fact regarding her hostile-educational-environment claim, and remand the case for further proceedings.

For these reasons, I respectfully dissent.

Richard H. Bernstein

13