# STATE OF MICHIGAN

# COURT OF APPEALS

JAMIE LASTER,

        Plaintiff-Appellee,

and

DEPARTMENT OF COMMUNITY HEALTH,

        Intervening Plaintiff,

v

HENRY FORD HEALTH SYSTEM and HENRY
FORD MACOMB HOSPITAL CORPORATION,

        Defendants-Appellants,

and

JOHN JANGKIU LIM and SURGICAL
ASSOCIATES OF MACOMB PLC,

        Defendants.

FOR PUBLICATION
August 23, 2016
9:00 a.m.

No.   324739
Macomb Circuit Court
LC No.   2013-000761-NH

Before:  SERVITTO, P.J., and SAAD and O'BRIEN, JJ.

SAAD, J.

## I.  NATURE OF THE CASE

The narrow but consequential legal question posed by this appeal is whether defendants-appellants, Henry Ford Health System and Henry Ford Macomb Hospital Corporation (collectively, hereinafter "Henry Ford," "the hospital," or "defendants"), are liable for defendant Dr. John Lim's alleged malpractice in his treatment of plaintiff at the hospital.

Normally, under Michigan law, a defendant is not vicariously liable for the tortious conduct of another, unless that other person is an employee or agent of the defendant.

Here, Dr. Lim is not on the payroll of the hospital and instead is employed by Surgical Associates of Macomb, P.L.C.  Dr. Lim has "on-call" privileges at Henry Ford and Beaumont

-1-

Hospital, which allows him the opportunity to treat patients at both hospitals' facilities. Consistent with this arrangement, the hospital is not paid by the patient for Dr. Lim's services, nor is Dr. Lim paid by the hospital. Instead, Dr. Lim bills the patient directly, and the patient pays Dr. Lim for his services. Indeed, plaintiff and her mother acknowledged Dr. Lim's employment status when they signed a "consent to surgery" form that expressly stated that Dr. Lim was not an employee of Henry Ford.

In light of these facts, plaintiff acknowledges that Dr. Lim is an independent contractor, but nonetheless argues that the hospital should be vicariously liable for Dr. Lim's medical malpractice in evaluating and treating plaintiff under Michigan's control test because Henry Ford's extensive "on-call" requirements constitutes sufficient control over Dr. Lim to impose vicarious liability. And, while the hospital concedes that its on-call protocols are extensive and comprehensive, it says that vicarious liability should not be imposed under Michigan's control test because it exerted no control over the precise matter at issue here, Dr. Lim's diagnosis and treatment of plaintiff. That is, the hospital points out that the extensive nature of the on-call policy deals primarily with qualifications of physicians, availability, and coverage, but does not in any way control the manner or methodology of diagnosis and treatment by the on-call physician of his patient, which is the only issue at bar.

Because, as noted above, plaintiff and her mother signed an agreement that expressly acknowledges that Dr. Lim is not an employee of the hospital and because plaintiff failed to produce any evidence that the hospital made any representations to the contrary, the trial court ruled that plaintiff failed to prove ostensible agency and dismissed this count of plaintiff's complaint. But the trial court ruled that Henry Ford's comprehensive on-call policy created a question of fact as to whether the hospital exerted sufficient control over Dr. Lim under Michigan's control test to make Dr. Lim the hospital's actual agent for the purpose of imposing vicarious liability and the hospital appeals this ruling. While defendants appealed the trial court's denial of their motion on the issue of actual agency, plaintiff failed to appeal the grant of the motion on the issue of ostensible agency.

Because plaintiff failed to appeal the ostensible agency dismissal, this issue is not before us and we decline to address it, and, for the reasons stated below, we reverse the trial court's ruling that denied the hospital's motion for summary disposition on the control test and remand for entry of judgment in favor of Henry Ford.

## II. FACTS & PROCEDURAL HISTORY

Dr. Lim testified that he is a board-certified surgeon, employed by Surgical Associates of Macomb, who has privileges at Henry Ford and Beaumont Hospital. At his deposition, Dr. Lim established that he and not the hospital bills for his services, and that he is not employed by, nor does he receive any compensation from the hospital. Dr. Lim also testified that he would bill plaintiff for his services and that plaintiff would pay him, not the hospital.

Henry Ford permitted Dr. Lim to treat plaintiff at its hospital pursuant to its "Unattended Call" policy ("on-call policy"). This policy applies to a range of medical providers, not simply to Dr. Lim or his medical group. To be entitled to on-call privileges, a physician must meet certain obligations while on-call, such as responding to a call within 30 minutes, treating all

patients assigned to him and staying on the on-call roster for a certain number of years. Importantly, the requirements of the on-call policy do not address the manner or methodology of an on-call doctor's diagnosis or treatment of patients. Nor does the on-call policy give Henry Ford the right to supervise or have any input regarding the physician's treatment of patients.

At 11:40 p.m. on September 3, 2010, plaintiff arrived at the emergency room of Henry Ford and complained of sharp pain in the right-lower quadrant of her abdomen, nausea, vomiting, and a history of Crohn's disease. The emergency room physician and radiologist who reviewed a CT scan of plaintiff's abdomen believed she was suffering from appendicitis. Dr. Lim, who was on-call at the time, was called to perform the appendectomy. Before the surgery took place, plaintiff and her mother, who served as a witness, signed a "consent to surgery" form, which stated in pertinent part that "I know my physician, like most physicians, is not a hospital employee."

At around 1:00 a.m. the following morning, plaintiff was taken to an operating room in the hospital and Dr. Lim performed a laparoscopic appendectomy, which was converted to an "open" appendectomy with resection of omentum and drainage of abscess. Afterward, plaintiff started suffering complications, which included elevated heart rate, sharp pains, and the presence of a dark brown, foul-smelling liquid from a Jackson-Pratt drain. Five days later, Dr. Lim performed an exploratory laparotomy and ileocecal resection. And five days after that surgery, Dr. Lim performed another surgery, this time a laparotomy with evacuation of abdominal abscess and end ileostomy. During this surgery, Dr. Lim determined that plaintiff was suffering from a bowel perforation secondary to her Crohn's disease, so he performed an ileocecectomy.

In her complaint, plaintiff alleged that Dr. Lim was negligent in evaluating plaintiff's condition and in performing surgery because he failed to diagnose and treat the perforation of her bowel. Furthermore, plaintiff contended that Henry Ford is vicariously liable for Dr. Lim's negligence because Dr. Lim is an actual agent or an ostensible agent of Henry Ford.

After the close of discovery, Henry Ford moved for summary disposition on the grounds that (1) the hospital did not have sufficient control over Dr. Lim to make Dr. Lim its agent for purposes of vicarious liability, and (2) plaintiff's ostensible agency theory failed because Henry Ford said and did nothing to represent that Dr. Lim was its employee and because plaintiff signed an acknowledgement that Dr. Lim was not Henry Ford's employer. Henry Ford maintained that Dr. Lim is an independent contractor and not its actual agent because it did not have control over him or his methods of diagnosis or treatment of patients, which allowed Dr. Lim to treat patients based on his own professional judgment. And based on the acknowledgement signed by plaintiff, Henry Ford maintained that plaintiff could not establish ostensible liability because plaintiff failed to produce any evidence that Henry Ford said or did anything contrary to the acknowledgement. Plaintiff filed a response and argued that the on-call policy provisions established that the hospital had actual control over Dr. Lim and asserted that an ostensible agency relationship arose because the acts, facts, and circumstances led plaintiff to believe that Dr. Lim was an employee of the hospital.

The trial court granted Henry Ford's motion for summary disposition in part and denied it in part. The court granted the motion regarding plaintiff's claim under the ostensible agency

theory.[1]  But the court relied on the on-call policy to deny the hospital's motion for summary disposition with respect to the issue of actual agency.[2]

This Court granted Henry Ford's application for leave to appeal "limited to the issues raised in the application and supporting brief." *Laster v Henry Ford Health Sys*, unpublished order of the Court of Appeals, entered December 26, 2014 (Docket No. 324739).  Plaintiff did not file a cross-appeal regarding the trial court's grant of summary disposition on the other issues, including the issue of ostensible agency.

## III.  STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).  When reviewing a motion for summary disposition under MCR 2.116(C)(10), this Court considers the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion to determine whether a genuine issue of material fact exists.  *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).  The motion is properly granted "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

## IV.  LEGAL PRINCIPLES

Generally, Michigan law will impose liability upon a defendant only for his or her own acts of negligence, not the tortious conduct of others.  However, an exception exists under the theory of respondeat superior, wherein an employer can be liable for the negligent acts of its employee if the employee was acting within the scope of his employment.  *Hamed v Wayne Co*,

---

[1] The trial court rejected plaintiff's alternative theory under MCL 333.21513(a) which provides that entities like defendants "[a]re responsible for all phases of the operation of the hospital . . . and quality of care rendered in the hospital."  The trial court relied on *Fisher v W A Foote Mem Hosp*, 261 Mich App 727; 683 NW2d 248 (2004), and noted that the statute does not create a cause of action for private plaintiffs.

[2] Each of these aspects were addressed separately and denoted by different subheadings under section IV in the trial court's opinion and order.  In subsection A, the court granted defendants' motion for summary disposition with respect to plaintiff's claims of direct negligence.  In subsection B, the court granted defendants' motion with respect to plaintiff's claim that defendants were liable because of a non-delegable duty under MCL 333.21513(a).  In subsection C, the court denied defendant's request for summary disposition with respect to plaintiff's claim that Dr. Lim was an actual agent of defendants.  And in subsection D, the court granted summary disposition to defendants on the issue of ostensible agency.

490 Mich 1, 10-11; 803 NW2d 237 (2011); *Hekman Biscuit Co v Commercial Credit Co*, 291 Mich 156, 160; 289 NW 113 (1939).[3]

Similarly, in the absence of an employer-employee relationship, vicarious liability can also attach through the concept of agency. As this Court has explained,

> A principal may be vicariously liable to a third party for harms inflicted by his or her agent even though the principal did not participate by act or omission in the agent's tort. Vicarious liability is indirect responsibility imposed by operation of law. Courts impose indirect responsibility on the principal for his or her agent's torts as a matter of public policy, but the principal, having committed no tortious act, is not a "tortfeasor" as that term is commonly defined. Because liability is imputed by law, a plaintiff does not have to prove that the principal acted negligently. Rather, to succeed on a vicarious liability claim, a plaintiff need only prove that an agent has acted negligently. Concomitantly, if the agent has not breached a duty owed to the third party, the principal cannot be held vicariously liable for the agent's actions or omissions. [*Bailey v Schaaf*, 304 Mich App 324, 347; 852 NW2d 180 (2014), vacated in part on other grounds 497 Mich 927 (2014) (quotation marks and citations omitted).]

In an agency relationship, it is the power or ability of the principal to "control" the agent that justifies the imposition of vicarious liability. See *Breighner v Mich High Sch Athletic Ass'n, Inc*, 255 Mich App 567, 583; 662 NW2d 413 (2003); *Little v Howard Johnson Co*, 183 Mich App 675, 680; 455 NW2d 390 (1990). Conversely, it is this absence of "control" that explains why an employer generally is not liable for the actions of an independent contractor. See *Campbell v Kovich*, 273 Mich App 227, 233-234; 731 NW2d 112 (2006). "An independent contractor is one who, carrying on an independent business, contracts to do a piece of work *according to his own methods*, and without being subject to control of his employer *as to the means by which the result is to be accomplished*, but only as to the result of the work." *Utley v Taylor & Gaskin, Inc*, 305 Mich 561, 570; 9 NW2d 842 (1943) (quotation marks and citation omitted; emphasis added). The labels that the parties use in such a relationship are not dispositive; instead,

> [t]he test for whether a worker is an independent contractor or an employee is whether the worker has control *over the method of his or her work*: If the employer of a person or business ostensibly labeled an "independent contractor"

---

[3] As our Supreme Court stated nearly 150 years ago, "[T]he master is bound to keep his servants within their proper bounds, and is responsible if he does not. The law contemplates that their acts are his acts, and that he is constructively present at them all." *Smith v Webster*, 23 Mich 298, 299-300 (1871). Although one of the reasons for imposing vicarious liability in this context is because employers typically have a greater ability to pay than an employee, other rationales exist, which include "providing an incentive for employers to attempt to reduce tortious conduct by their employees and the fair distribution of risk associated with activity characteristic of a business or other entity." *Rogers v J B Hunt Transport, Inc*, 466 Mich 645, 651-652; 649 NW2d 23 (2002); see also Prosser & Keeton, Torts (5th ed), § 69, p 500.

retains control *over the method of the work*, there is in fact no contractee-contractor relationship, and the employer may be vicariously liable under the principles of master and servant. [*Campbell*, 273 Mich App at 234 (quotation marks and citations omitted; emphasis added).]

Thus, it is clear that not just any type of "control" will suffice to transform an independent contractor into an employee or agent; rather, the "control" must relate to the method of the work being done.

With these legal principles in mind, we agree with Henry Ford's contention that it was entitled to judgment as a matter of law because the hospital exerted insufficient control over the acts of Dr. Lim.

## V. ANALYSIS

## A. CONTROL TEST

Consistent with the above case law, a hospital will not be held vicariously liable for the negligence of a physician who is an independent contractor, unless the hospital has assumed control over the physician. *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 250; 273 NW2d 429 (1978). Here, the parties do not dispute that Dr. Lim is, an independent contractor. Dr. Lim was employed by Surgical Associates of Macomb—not Henry Ford. But plaintiff claims that under the on-call policy, the hospital possessed a sufficient amount of control over Dr. Lim to make him an agent under Michigan's control test. Our review of the record suggests that Dr. Lim is clearly an independent contractor because Henry Ford did not control the manner or method used by on-call doctors, like Dr. Lim, to diagnose or treat their patients.

Here, Henry Ford had very little control over Dr. Lim, and no "control over the method of his . . . work." *Campbell*, 273 Mich App at 234. His on-call responsibilities notwithstanding, Dr. Lim was generally free to see as many or as few patients as he desired, he could generally select his own patients, he did not and was not required to use the administrative machinery of the hospital to bill patients, and he was part of an entirely separate practice with its own staff and employees. Also, the hospital never paid Dr. Lim for his services, and he was free to obtain privileges at other hospitals. The mere fact that a physician is required to maintain privileges at a hospital and undertake on-call responsibilities is not sufficient under Michigan law to constitute "control" over the physician's professional practice of medicine.

The trial court relied on select provisions of the on-call agreement when it found that a question of fact existed regarding whether Dr. Lim was an actual agent of Henry Ford. The court explained:

> The on-call agreement establishes that the on-call physician's schedule is determined by Defendants, that it must be followed, and scheduling changes are controlled and limited by Defendants. The on-call agreement sets forth time standards on responding to a request for an on-call physician, and requires minimum admission levels. The on-call agreement also limits consultations to other on-call physicians, thereby directing the path of a contractual relationship between the patient and physicians selected by Defendants. The on-call

-6-

agreement further requires acceptance of all patients assigned, and requires at least one office visit after discharge.

We disagree that the above aspects of the on-call agreement create a question of fact regarding whether Dr. Lim was an agent of defendants. Notably, none of the above requirements speaks to how Dr. Lim is to diagnose patients or how he is to perform surgery while at Henry Ford. The fact that defendants may have required some logistical and quality-assurance measures does not rise to the level of "control over the method of [Dr. Lim's] work," *id.*, especially when the "work" that is alleged to have been negligently performed is not addressed by the on-call agreement. As we explained in *Samodai v Chrysler Corp*, 178 Mich App 252, 256; 443 NW2d 391 (1989), which involved the plaintiff's claim that the employer retained substantial control over the construction work performed by its independent contractor,

> [C]ontractual provisions subjecting the contractor to the contractee's oversight are not enough to retain effective control. The requisite nature of this standard requires that the owner retain at least partial control and direction of *actual* construction work, which is not equivalent to safety inspections and general oversight. [Citation omitted.]

Similar to the defendant in *Samodai*, Henry Ford did not retain any, much less sufficient, control and direction of Dr. Lim's actual work, i.e., his practice of medicine.[4] It is key to our holding that the on-call policy relied on by plaintiff and the trial court does not give Henry Ford the right to address or control how any on-call physician, including Dr. Lim, diagnoses or treats a patient. Importantly, there is no record evidence that Henry Ford directed, supervised, or otherwise had any input on how Dr. Lim made his diagnosis or conducted surgery. Accordingly, because plaintiff's medical malpractice claim is predicated on Dr. Lim's exercise of professional judgment, over which the hospital had no control or influence, we hold that under Michigan's control test, Dr. Lim was not an agent of Henry Ford.

Therefore, the trial court erred when it relied on the on-call policy to find that there was a question of fact regarding whether Dr. Lim was an actual agent of Henry Ford under Michigan's control test and erred when it denied defendant's motion for summary disposition on this issue.

---

[4] In our view, the closest that defendants come to exerting any amount of control over how Dr. Lim engaged in the practice of medicine is found is § 2.X of the on-call agreement. This section provides that Dr. Lim is "to utilize solely the designated primary care physicians or designated specialists on the Unattended Call lists for all consultative or admitting care provided to the unattended patient, for at least the first 3 days after admission." However, it is clear that to the extent that defendants were exerting control over *this* aspect of Dr. Lim's ability to practice medicine (i.e., requiring him to utilize certain physicians or specialists during a patient's first three days after being admitted to the hospital), no control was exerted over how Dr. Lim performed the alleged negligent acts of misdiagnosis, surgery, etc. in this case. Accordingly, imposing vicarious liability on defendants *when they had no ability to control the alleged negligent acts* would run counter to the supporting rationale behind the imposition of vicarious liability.

## B. OSTENSIBLE AGENCY

In its October 30, 2014, opinion, the trial court found that plaintiff failed to produce sufficient evidence to create a question of fact to support her ostensible agency theory of liability. As noted above, plaintiff's written acknowledgement (and her mother's written acknowledgement, as a witness) that Dr. Lim was an independent contractor and not an employee of Henry Ford, coupled with a failure to produce any evidence that the hospital made any representation to the contrary, supported the trial court's ruling. And because plaintiff failed to file a cross-appeal regarding the trial court's dismissal of this theory of liability, this matter is not before us, and we decline to address it. Moreover, in this Court's order that granted leave to appeal, we expressly limited review to "issues raised in the application and supporting brief," and only the issue of actual agency liability was presented. Therefore, we are not at liberty to review this issue.

## VI. CONCLUSION

For the foregoing reasons, we reverse the trial court's decision to deny Henry Ford's motion for summary disposition on the issue of actual agency and remand for the trial court to grant summary disposition in favor of defendants. We do not retain jurisdiction. We decline to address the issue of ostensible agency, as it was not properly raised on appeal. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Henry William Saad
/s/ Deborah A. Servitto
/s/ Colleen A. O'Brien

-8-