*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALAN LARES,

      Plaintiff-Appellant,

v

JOHN DOE I and JOHN DOE II,

      Defendants,

and

EVOLUTION SPORTSPLEX LLC,

      Defendant-Appellee.

FOR PUBLICATION
March 26, 2025
1:23 PM

No. 370339
Oakland Circuit Court
LC No. 2023-198549-NI

Before: YATES, P.J., and LETICA and N. P. HOOD, JJ.

N. P. HOOD, J.

In this case arising from an injury sustained during a recreational soccer game, plaintiff, Alan Lares, appeals by right the trial court's order granting summary disposition in favor of defendants, John Doe I, John Doe II, and Evolution Sportsplex, LLC (Evolution), under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.[1]

## I. BACKGROUND

This case arises out of Lares's injury sustained during an indoor recreational soccer game at the Evolution Sportsplex in August 2022. Lares was a member of a soccer team that played

---

[1] We submit this opinion for publication under MCR 7.215(B)(1) because, as a matter of first impression, we conclude that referees tasked with officiating recreational activities owe the participants a duty to refrain from acting recklessly, and recreational sports facilities tasked with organizing recreational activities owe the participants a duty to refrain from acting negligently in organizing such activities.

weekly soccer games in a league designated for men above the age of 30. Following his injury Lares sued the player who injured him (John Doe I), the referee (John Doe II), and the sporting facility (Evolution).

Lares described the events that led to his injury during his deposition. He testified that shortly after the soccer game began, an individual—whom he referred to as John Doe I—fouled one of his teammates by pushing him out of bounds and causing him to fall face-first into a nearby wall. The referee—whom Lares referred to as John Doe II—neglected to call the foul and award a corresponding free kick to Lares's team. Lares explained that when the foul took place, the referee was speaking with an individual outside the field of play rather than paying attention to the match. He described the referee's failure to call the foul as "a bad miss by the ref" that led to more aggressive play during the game. During the second half of the game, Lares dribbled the soccer ball toward the opposing team's net while John Doe I followed closely behind in an attempt to recover possession of the ball. As Lares planted his left foot in preparation for striking the ball with his right foot, John Doe I "stomp[ed]" on his left leg and pushed him to the ground. This foul broke Lares's left tibia and fibula. While on the ground, Lares looked at the referee, who was again speaking with an individual outside the field of play rather than paying attention to the events on the field. Lares opined that John Doe I intended to injure him. He also acknowledged that he could not identify any other instances in which John Doe II neglected to pay attention to the events on the field.

After the soccer game concluded, John Doe II prepared a written "Referee Report" detailing the final score and notable events from the game. It also included blank spaces for the preparer to identify three additional referees. The report provided that John Doe II did not issue any yellow cards or red cards during the game. It also provided an account of a "serious injury" that occurred. According to the report, an individual "shot [the] ball cleanly without a foul" while an opposing defender was "in the vicinity" but made no physical contact with them. After the play, the individual "ended [up] on [the] turf." John Doe II approached the individual and saw that his "left foot (non shooting) [was] dislocated." By that time, the individual's teammates had already called an ambulance. The report further provided that "[t]he game was fairly contested" and "[t]here were a handful of fouls" for which John Doe II awarded the teams corresponding free kicks.

Lares filed a four-count complaint against John Doe I, John Doe II, and Evolution. Relevant here, in Count 3, Lares stated a claim labeled as negligence and/or gross negligence against Evolution. He alleged that Evolution failed to adequately protect its patrons and otherwise failed to hire, train, or supervise competent agents or employees, thereby breaching its duty to refrain from acting recklessly—or, at least, negligently—and causing Lares's injury.[2] In Count 4, Lares stated a claim for respondeat superior in relation to John Doe II's conduct. He alleged that

---

[2] Count 3 may be partially characterized as a claim for negligent hiring, retention, training, or supervision. See *Mueller v Brannigan Bros Restaurants & Taverns LLC*, 323 Mich App 566, 574; 918 NW2d 545 (2018) ("[T]he gravamen of negligent hiring or retention is that the employer bears some responsibility for bringing an employee into contact with a member of the public despite knowledge that doing so was likely to end poorly.").

John Doe II was Evolution's agent or employee, and Evolution was vicariously liable for his reckless—or, at least, negligent—conduct.

Evolution moved for summary disposition under MCR 2.116(C)(10). It argued that there was no genuine issue of material fact regarding its liability for direct negligence. Evolution asserted that the reckless-misconduct standard of care applied because Lares was engaged in a recreational activity when his injury occurred. Lares's injury was a normal consequence of a typical soccer game, and it could not have prevented Lares's injury by acting differently. Evolution further argued that there was no genuine issue of material fact regarding its liability for respondeat superior. It reiterated that the reckless-misconduct standard of care applied because Lares was engaged in a recreational activity when his injury occurred, Lares's injury was a normal consequence of a typical soccer game, and Lares could not present any evidence of reckless misconduct by John Doe II.

In response, Lares argued that general negligence principles applied because Evolution and John Doe II were not coparticipants in the recreational soccer game with Lares. He also contended that there was a genuine issue of material fact regarding John Doe II's negligence—and, by extension, Evolution's vicarious liability—because John Doe II allowed the players' conduct to escalate by failing to monitor and appropriately officiate the game. He further argued that there was a genuine issue of material fact regarding Evolution's direct negligence because it assigned an inattentive referee to the soccer game and failed to supply additional referees as called for in its referee report.

The trial court granted Evolution's summary disposition motion under MCR 2.116(C)(10).[3] It held that the reckless-misconduct standard of care applied to Evolution's alleged acts and omissions because Lares's injury occurred while he was engaged in a recreational activity. It concluded that "[a]lthough the documentary support submitted in this action from both sides was scant, there remains no genuine issue of material fact as to Evolution's breach. Evolution did not breach the duty owed to [Lares]." It further concluded that Evolution was not vicariously liable for John Doe II's alleged acts and omissions because Lares failed to present any evidence that John Doe II was Evolution's employee, and "because John Doe [II] was a necessary joinder in this action, and [Lares] failed to pursue the claims against John Doe [II], [Lares] cannot show that John Doe [II] breached any duty owed to [Lares]. Thus, Evolution has no vicarious liability as to John Doe [II]." This appeal followed.

## II. STANDARDS OF REVIEW

"The issue of the applicable standard of care is a question of law that we review de novo." *Composto v Albrecht*, 328 Mich App 496, 499; 938 NW2d 755 (2019). We likewise review de novo a trial court's decision to grant or deny a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 160. When considering a motion under MCR 2.116(C)(10), the trial court must "consider all evidence submitted by the parties in the light

---

[3] The trial court also dismissed Lares's claims against John Doe I and John Doe II without prejudice and on its own motion because Lares never served them with copies of the complaint.

-3-

most favorable to the party opposing the motion." *Id*. The trial court may only grant the motion if there is "no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

## III. LAW AND ANALYSIS

The trial court did not err by granting summary disposition of Lares's direct and vicarious liability claims in favor Evolution. Referees officiating recreational activities owe the participants a duty to refrain from acting recklessly. Recreational sports facilities hosting or organizing recreational activities owe the participants a duty to refrain from acting negligently in hosting or organizing such activities. As a matter of law, neither John Doe II nor Evolution breached their respective duties. See *Behar v Fox*, 249 Mich App 314, 319; 642 NW2d 426 (2001). See also *Case v Consumers Power Co*, 463 Mich 1, 7; 615 NW2d 17 (2000). And although the trial court erred by dismissing Lares's vicarious-liability claim against Evolution on the basis of its conclusion that he failed to join John Doe II as a necessary party to the case, we decline to reverse on this basis because the trial court reached the correct result, albeit partially for the wrong reason.

## A. STANDARD OF CARE

Negligence has four elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Finazzo v Fire Equip Co*, 323 Mich App 620, 635; 918 NW2d 200 (2018). "Duty is the legal obligation to conform one's conduct to a particular standard to avoid subjecting others to an unreasonable risk of harm." *Composto*, 328 Mich App at 499. "Under ordinary-negligence principles, a defendant owes a plaintiff a duty to exercise ordinary care under the circumstances." *Id*. at 500. "Ordinary care means the care that a reasonably careful person would use under the circumstances." *Case*, 463 Mich at 7.

In *Ritchie-Gamester v Berkley*, 461 Mich 73; 597 NW2d 517 (1999), our Supreme Court addressed "the proper standard of care among coparticipants for unintentional conduct in recreational activities." *Ritchie-Gamester*, 461 Mich at 77. There, the defendant—a 12-year-old girl—ran into the plaintiff during an open-skating period at an ice rink, knocking her to the ground and causing serious injury to her knee. *Id*. at 75. Regarding the applicable standard of care, the Court stated that "[w]hen people engage in a recreational activity, they have voluntarily subjected themselves to certain risks inherent in that activity[]" such that "[w]hen one of those risks results in injury, the participant has no ground for complaint." *Id*. at 87. It explained:

> With these realities in mind, we join the majority of jurisdictions and adopt reckless misconduct as the minimum standard of care for coparticipants in recreational activities. We believe that this standard most accurately reflects the actual expectations of participants in recreational activities . . . we believe that participants in recreational activities do not expect to sue or be sued for mere carelessness. A recklessness standard also encourages vigorous participation in recreational activities, while still providing protection from egregious conduct. Finally, this standard lends itself to common-sense application by both judges and juries. [*Id*. at 89 (footnote omitted).]

Put simply, coparticipants in recreational activities accept certain inherent risks and "owe each other a duty not to act recklessly." *Id*. at 95. One acts recklessly when their conduct demonstrates a willingness to harm others or an indifference to whether such harm occurs. See *Behar*, 249 Mich App at 319. The reckless-misconduct standard "only applies to injuries that arise from risks inherent to the activity." *Bertin v Mann*, 502 Mich 603, 609; 918 NW2d 707 (2018). "[T]he assessment of whether a risk is inherent to an activity depends on whether a reasonable person under the circumstances would have foreseen the particular risk that led to injury." *Id*. at 619.

This case presents two related issues of first impression in Michigan: (1) whether referees tasked with officiating recreational activities owe the participants a duty to refrain from acting recklessly under the standard articulated in *Ritchie-Gamester*, and (2) whether owners and operators of recreational sports facilities owe the participants a duty to refrain from acting recklessly in facilitating recreational activities under the standard articulated in *Ritchie-Gamester*.

We have historically limited our application of the reckless-misconduct standard articulated in *Ritchie-Gamester* to active coparticipants in recreational activities. See, e.g., *Behar*, 249 Mich App at 316. For example, in *Behar*, we applied the reckless-misconduct standard when analyzing the actions of a youth soccer coach who allegedly injured one of his players by colliding with him while participating in a scrimmage. *Id.* We explained that "the mere fact that [the] plaintiffs' minor son was injured in a collision with an adult coach rather than with a larger child coparticipant is of insufficient distinction to take this case out of the realm of the *Ritchie-Gamester* standard[,]" and concluded that the youth soccer coach "was as much a 'coparticipant' in the scrimmage as he was a coach." *Id*. at 318. In contrast, in *Sherry v East Suburban Football League*, 292 Mich App 23, 26-27; 807 NW2d 859 (2011), we declined to apply the reckless-misconduct standard when analyzing the actions of a youth cheerleading coach who allegedly failed to properly train or supervise cheerleaders performing dangerous stunts, leading to injuries. We explained that

> the reckless-misconduct standard adopted in *Ritchie-Gamester* is inapplicable. The Court in *Ritchie-Gamester* was careful, in fact, to note the limited reach of its holding. In addition, the justifications that the Supreme Court cited for adopting the reckless-misconduct standard do not support extending the standard to coaches and organizations. Coaches and organizations can expect to be sued for their carelessness, and holding coaches and organizations to an ordinary negligence standard of care does not discourage vigorous participation in recreational activities. Had [the] plaintiff brought her claim against other cheerleaders, who may properly be considered coparticipants in the recreational activity of cheerleading, then, perhaps, the reckless-misconduct standard announced in *Ritchie-Gamester* would apply. [*Sherry*, 292 Mich App at 27-28.]

Notwithstanding our past limited application of the reckless-misconduct standard articulated in *Ritchie-Gamester*, our courts have not squarely addressed whether certain defendants, such as referees tasked with officiating recreational activities or owners and operators of recreational sports facilities, owe participants a duty to refrain from reckless misconduct. We therefore consider as persuasive relevant authorities from other jurisdictions. See *In re McPeak Estate*, 210 Mich App 410, 414-415; 534 NW2d 140 (1995).

In *Karas v Strevell*, 227 Ill 2d 440, 464; 884 NE2d 122 (2008), the Illinois Supreme Court declined to apply an ordinary negligence standard when analyzing the alleged acts and omissions of those involved in facilitating recreational youth hockey, including a hockey association, hockey league, and hockey officials' association. There, the plaintiff allegedly suffered injuries while participating in a youth hockey game when other players body checked him from behind in violation of league rules. *Id*. at 444-445. In concluding that an ordinary negligence standard did not apply, the court reasoned that

> "[R]ules violations are inevitable in contact sports and are generally considered an inherent risk of playing the game. Further, in an organized contact sport, such as the one at issue here, the enforcement of the rules directly affects the way in which the sport is played. Imposing too strict a standard of liability on the enforcement of those rules would have a chilling effect on vigorous participation in the sport. Finally, as the organizational defendants point out, coaching and officiating decisions involve subjective decisionmaking that often occurs in the middle of a fast moving game. It is difficult to observe all the contact that takes place during an ice hockey game, and it is difficult to imagine activities more prone to second-guessing than coaching and officiating. Applying an ordinary negligence standard to these decisions would open the door to a surfeit of litigation and would impose an unfair burden on organizational defendants such as those in the case at bar. Accordingly, we conclude that, under the facts alleged here, the contact sports exception applies to the organizational defendants. To successfully plead a cause of action for failing to adequately enforce the rules in an organized full-contact sport, [the] plaintiff must allege that the defendant acted with intent to cause the injury or that the defendant engaged in conduct "totally outside the range of the ordinary activity" involved with coaching or officiating the sport. [*Id*. at 464-465 (citations omitted).]

In other words, referees are not perfect. See *id.* And applying an ordinary negligence standard to referees would have a chilling effect on referees and players that would change the nature of play. See *id.*

Similarly, in *Kline v OID Assoc, Inc*, 80 Ohio App 3d 393, 395; 609 NE2d 564 (1992), the Ohio Court of Appeals applied a reckless-misconduct standard when analyzing the alleged acts and omissions of those involved in facilitating a recreational adult soccer game, including the referee, the facility owner, and the entity that organized the soccer league. There, the plaintiff allegedly suffered an injury when an opposing player kicked him—either intentionally or inadvertently—as part of an attempt to score a goal. *Id*. at 394. The plaintiff claimed that, because both teams played aggressively throughout the game, the referee should have known that allowing the game to continue would create an unreasonable risk of harm to the participants. *Id*. at 396. In concluding that a reckless-misconduct standard applied, the court explained:

> In a case involving one player against another, the Supreme Court of Ohio determined that before a party may proceed with a cause of action involving injury resulting from a recreational or sports activity, reckless or intentional misconduct must exist. Whether the game is organized, unorganized, supervised or unsupervised, the standard of liability remains the same. Such a standard strikes a

balance between encouraging vigorous and free participation in recreational or sport activities, while ensuring the safety of the players. The same logic and standard should apply to nonparticipants involved in the game, unless there is evidence of negligent supervision. To successfully state a cause of action under the theory of negligent supervision, the party must produce evidence such as a defendant allowing a player with a known propensity toward violence to play or allowing a team to play when there was a total absence of management. [*Id*. at 395-396 (citations omitted).]

Applying this standard, the court determined that the plaintiff failed to establish that the referee knew that the game involved a greater risk than an ordinary soccer game. *Id*. at 396. It noted that the plaintiff would simply have declined to participate if the level of play was obviously too dangerous. *Id*.[4]

Here, as a matter of first impression, we conclude that referees tasked with officiating recreational activities owe the participants a duty to refrain from acting recklessly under the standard articulated in *Ritchie-Gamester*. As our Supreme Court has explained, participants in recreational activities subject themselves to certain risks inherent in those activities. *Ritchie-Gamester*, 461 Mich at 87. Vigorous play and rule violations are inherent risks of engaging in contact sports. See *Karas*, 227 Ill 2d at 464. To hold otherwise could unjustly insulate from liability participants in recreational activities directly responsible for injuring others while imposing liability on referees who bear indirect responsibility for such injuries.

As a matter of first impression, we also conclude that recreational sports facilities tasked with organizing recreational activities owe the participants a duty to refrain from acting negligently in organizing such activities. As we explained in *Sherry*, 292 Mich App at 28, organizational defendants can expect to be sued for their carelessness in organizing recreational activities, and holding them to an ordinary negligence standard of care does not discourage vigorous participation in the recreational activities themselves. Additionally, facilities tasked with organizing recreational activities are not akin to active participants in such activities. Analyzing the acts and omissions of recreational sports facilities under a general negligence standard will not open the door to a flood of litigation that would task courts with second-guessing real-time decisions of

---

[4] We are not aware of any out-of-state courts that have adopted a lesser standard of care than that articulated in *Ritchie-Gamester* but specifically declined to extend its application to defendants such as referees or recreational sports facilities. Multiple out-of-state courts confronted with this issue have specifically declined to address its merits, opting instead to conclude as a matter of law that claims against such defendants fail for lack of causation. See *Borella v Renfro*, 96 Mass App 617, 627; 137 NE3d 431 (2019) ("[N]othing in the record supports a finding of a causal nexus between any action or inaction by either [referee] and [the plaintiff's] injury"). See also *Vaillancourt v Latifi*, 81 Conn App 541, 548; 840 A2d 1209 (2004) ("[W]e need not decide the type of action an injured athlete must allege to prevail against the organizer of an athletic league. Instead, we conclude that the plaintiff failed to allege material facts with respect to the mechanism of his injury that gave rise to a duty owed him by the [defendant]. The negligent acts the plaintiff alleged were not the proximate cause of his injury." (footnote omitted)).

those engaged in recreational activities. Nor will it have a chilling effect on participants' vigorous participation in such activities.

## B. DIRECT LIABILITY

Lares argues that the trial court erred by granting summary disposition in favor of Evolution in relation to Count 3 of his complaint because there remains a genuine issue of material fact regarding whether Evolution breached its duty by assigning a single inattentive referee to officiate the soccer game at issue. We disagree.

Again, negligence requires a plaintiff to establish (1) duty, (2) breach, (3) causation, and (4) damages. *Finazzo*, 323 Mich App at 635. "Under ordinary-negligence principles, a defendant owes a plaintiff a duty to exercise ordinary care under the circumstances." *Composto*, 328 Mich App at 500. "Ordinary care means the care that a reasonably careful person would use under the circumstances." *Case*, 463 Mich at 7.

In support of his argument that Evolution breached its duty, Lares relies on Evolution's referee report, which included blank spaces enabling the preparer to identify three additional referees officiating the soccer game at issue. Although the referee report contemplated the possibility that multiple referees could be assigned to officiate a single soccer game, Lares failed to present any evidence or otherwise cite any statute, rule, or regulation requiring more than one referee to officiate a single soccer game. Lares also failed to present any evidence that Evolution personnel knew that John Doe II was an inattentive referee but nevertheless allowed him to independently officiate the soccer game at issue. And Lares failed to present any evidence that Evolution hired or retained John Doe II despite having knowledge that he was an inattentive referee or otherwise neglected to adequately train him. Lares therefore failed to establish a genuine issue of material fact regarding whether Evolution neglected to exercise ordinary care under the circumstances. Lares likewise failed to establish a genuine issue of material fact that Evolution's acts or omissions caused his injury, which may have occurred regardless of the referee or referees assigned to officiate the soccer game. Accordingly, the trial court did not err by granting summary disposition in favor of Evolution in relation to Count 3.

## C. VICARIOUS LIABILITY

Lares argues that the trial court erred by granting summary disposition in favor of Evolution in relation to Count 4 of his complaint because there remains a genuine issue of material fact regarding whether John Doe II breached his duty by failing to properly officiate the game at issue, and the trial court erroneously dismissed Lares's claim on the basis of its conclusion that Lares failed to successfully join John Doe II as a necessary party to the case. We agree only in part. Nevertheless, because the trial court reached the correct result, albeit partially for the wrong reason, we decline to reverse on this basis.

"Generally, Michigan law will impose liability upon a defendant only for his or her own acts of negligence, not the tortious conduct of others." *Laster v Henry Ford Health Sys*, 316 Mich App 726, 734; 892 NW2d 442 (2016). "However, an exception exists under the theory of respondeat superior, wherein an employer may be liable for the negligent acts of its employee if the employee was acting within the scope of his employment." *Id*. "Similarly, in the absence of

an employer-employee relationship, vicarious liability may also attach through the concept of agency." *Id*. at 735. "A principal may be vicariously liable to a third party for harms inflicted by his or her agent even though the principal did not participate by act or omission in the agent's tort." *Id*. (citation omitted).

As addressed in Part III.A of this opinion, referees tasked with officiating recreational activities owe the participants a duty to refrain from acting recklessly under the standard articulated in *Ritchie-Gamester*. One acts recklessly if their conduct demonstrates a willingness to harm others or an indifference to whether such harm occurs. See *Behar*, 249 Mich App at 319.

Lares argues that John Doe II breached his duty by failing to observe the soccer game at issue, let alone properly officiate it. In support of this argument, he relies on his own deposition testimony wherein he stated that John Doe II neglected to call two fouls that occurred while he was speaking to individuals outside the field of play rather than paying attention to the events on the field. Yet, Lares also acknowledged that he could not identify any other instances during the soccer game in which John Doe II neglected to pay attention to the events on the field. John Doe II also noted in his referee report that he called "a handful of fouls" during the game and awarded multiple corresponding free kicks. Additionally, neither Lares nor John Doe II identified any other injuries that occurred throughout the game. While evidence that a referee failed to call two fouls throughout the course of a soccer game may establish a genuine issue of material fact regarding their failure to exercise ordinary care, such evidence alone does not establish a genuine issue of material fact regarding a referee's willingness to harm others or an indifference to whether such harm occurs, as required to establish reckless misconduct. Accordingly, the trial court correctly concluded that Lares's vicarious-liability claim failed as a matter of law.

We nevertheless recognize that the trial court erred by dismissing Lares's vicarious-liability claim against Evolution on the basis of its conclusion that he failed to join John Doe II as a necessary party to the case. Our Supreme Court has defined vicarious liability as "indirect responsibility imposed by operation of law." *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280, 294; 731 NW2d 29 (2007) (quotation marks and citations omitted). "Vicarious liability is based on a relationship between the parties, irrespective of participation, either by act or omission, of the one vicariously liable, under which it has been determined as a matter of policy that one person should be liable for the act of the other." *Id*. (quotation marks and citations omitted). "Vicarious liability thus rests on the imputation of the negligence of an agent to a principal." *Id*. "Nothing in the nature of vicarious liability, however, requires that a judgment be rendered against the negligent agent." *Id*. "Rather, to succeed on a vicarious liability claim, a plaintiff need only prove that an agent has acted negligently." *Id*. at 294-295. In *Grimmer v Lee*, 310 Mich App 95, 101; 872 NW2d 725 (2015), we explained that *Al-Shimmari*, 477 Mich at 294-295, among other cases, demonstrated that in order to prevail on a vicarious-liability claim, "a plaintiff need not necessarily name the agent as a defendant when suing the principal." *Grimmer*, 310 Mich App at 101. In other words, "a plaintiff may elect to sue the principal alone, or to sue the principal and the agent together." *Id*.

In light of these principles, the trial court erred by dismissing Lares's vicarious-liability claim against Evolution on the basis of its conclusion that he failed to join John Doe II as a necessary party to the case. *Al-Shimmari* and *Grimmer* demonstrate that a plaintiff may recover under a vicarious-liability theory even if they elect to the sue the principal alone. John Doe II was

therefore not a necessary party to the case. Regardless, we decline to reverse on this basis because the trial court reached the correct result, albeit partially for the wrong reason. See *Gleason v Mich Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").

## IV. CONCLUSION

The trial court did not err by granting summary disposition of Lares's direct and vicarious liability claims in favor Evolution. We therefore affirm.

/s/ Noah P. Hood
/s/ Christopher P. Yates
/s/ Anica Letica