*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERIC OLSON, Personal Representative of the
ESTATE OF REBECCA BAKER-OLSON,

        Plaintiff-Appellant,

v

JAMES MARTIN M.D., AMY STOREY N.P., and
MCLAREN PORT HURON CENTER FOR
CARDIOVASCULAR AND THORACIC
SURGERY,

        Defendants,

and

MCLAREN PORT HURON,

        Defendant-Appellee.

UNPUBLISHED
June 20, 2025
10:35 AM

No. 370069
St. Clair Circuit Court
LC No. 21-001873-NH

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

In this medical malpractice case, plaintiff, Eric Olson, Personal Representative of the Estate of Rebecca Baker-Olson, appeals by leave granted[1] the order granting summary disposition to defendant, McLaren Port Huron, under MCR 2.116(C)(10), and dismissing McLaren from the case. We reverse and remand.

---

[1] *Estate of Rebecca Baker-Olson v James Martin M.D.*, unpublished order of the Court of Appeals, entered April 9, 2024 (Docket No. 370069).

-1-

## I. FACTUAL BACKGROUND

Rebecca Baker-Olson presented to Harbor Beach Community Hospital complaining of chest pain and pressure radiating to her arms. She was subsequently transferred to McLaren. While at McLaren, Baker-Olson had a consultation with Dr. Beeravolu Reddy, who recommended aortocoronary bypass surgery. A surgical consultation took place and the report, signed by defendant, Dr. James R. Martin, stated: "At this point in time we recommend urgent coronary artery bypass grafting." Baker-Olson's surgery was scheduled for two days later.

During the consultation, Martin informed Baker-Olson and her husband, Eric Olson, that he performed cardiac surgeries "all over the thumb," stating "[i]t didn't matter what hospital you went to you would have gotten me anyway." Baker-Olson remained at McLaren pending her surgery. While awaiting surgery, Baker-Olson suffered cardiopulmonary arrest and died.

Plaintiff brought a complaint for vicarious liability against, among others, McLaren. McLaren moved for summary disposition under MCR 2.116(C)(10), arguing the evidence did not establish McLaren was vicariously liable for allegations made against Martin. The trial court granted summary disposition, in favor of McLaren, reasoning:

> The Court has reviewed the, the Motion and the Response and the relevant case law and although the court's decision in [*Markel v William Beaumont Hosp (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued January 4, 2024 (Docket No. 350655) (*Markel III*)][2] is not controlling, the Court does find it persuasive.

> And relying on the language and the principles set forth in that decision, the Court is of the opinion and does find that there is no genuine issue of material fact as to whether [] Dr. Martin was an agent of, of McLaren Port Huron Hospital. The facts indicate he was not.

## II. STANDARD OF REVIEW

"We review de novo motions for summary disposition brought under MCR 2.116(C)(10)." *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012).

---

[2] In *Markel v William Beaumont Hosp*, unpublished per curiam opinion of the Court of Appeals, issued April 22, 2021 (Docket No. 350655) (*Markel I*), we considered whether a hospital could be held vicariously liable for alleged medical malpractice of a doctor under a theory of ostensible agency. We held the plaintiff did not reasonably believe the doctor was an agent of the hospital. *Id*. at 6-7. *Markel v William Beaumont Hosp*, 510 Mich 1071 (2022) (*Markel II*), reversed *Markel I*, holding we misapplied *Grewe v Mount Clemens Gen Hosp*, 404 Mich 240; 273 NW2d 429 (1978). On remand, in *Markel III*, we affirmed summary disposition in favor of the hospital on the basis of lack of reliance. *Markel III*, unpub op at 8-9. Leave to appeal is currently pending. *Markel v William Beaumont Hosp* , ___ Mich ___; 10 NW3d 650 (2024).

A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks, citations, and emphasis omitted).]

## III. ANALYSIS

Plaintiff argues that the trial court erred by granting summary disposition in favor of McLaren. Although we hold that the evidence does not create a genuine issue of fact as to actual agency, there is a genuine issue of material fact regarding ostensible agency.

"The plaintiff in a medical malpractice action bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury. Failure to prove any one of these elements is fatal." *Cox ex rel Cox v Bd of Hosp Managers for City of Flint*, 467 Mich 1, 10; 651 NW2d 356 (2002) (quotation marks and citation omitted). "A hospital may be 1) directly liable for malpractice, through claims of negligence in supervision of staff physicians as well as selection and retention of medical staff, or 2) vicariously liable for the negligence of its agents." *Id*. at 11 (quotation marks and citations omitted). Plaintiff's medical malpractice action against McLaren is premised on a theory of vicarious liability.

"Vicarious liability is indirect responsibility imposed by operation of law." *Id*. (quotation marks and citation omitted). "Generally speaking, a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients." *Chapa v St Mary's Hosp of Saginaw*, 192 Mich App 29, 31; 480 NW2d 590 (1991). "Vicarious liability thus rests on the imputation of the negligence of an agent to a principal." *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280, 294; 731 NW2d 29 (2007).

## A. ACTUAL AGENCY

The parties first dispute whether Martin was an agent of McLaren or independent contractor. We hold plaintiff has not met the requisite burden of proof to establish actual agency.

"The test for whether a worker is an independent contractor or an employee is whether the worker has control over the method of his or her work[.]" *Campbell v Kovich*, 273 Mich App 227, 234; 731 NW2d 112 (2006). "The labels that the parties use in such a relationship are not dispositive." *Laster v Henry Ford Health Sys*, 316 Mich App 726, 736; 892 NW2d 442 (2016).

An independent contractor is one who, carrying on an independent business, contracts to do a piece of work *according to his own methods*, and without being subject to control of his employer *as to the means by which the result is to be accomplished*, but only as to the result of the work. [*Id*. at 735-736 (quotation marks and citation omitted).]

"[N]ot just any type of control will suffice to transform an independent contractor into an employee or agent; rather, the control must relate to the method of the work being done." *Id*. at 736.

Plaintiff failed to provide evidence establishing Martin was an actual agent of McLaren. See *Cox ex rel Cox*, 467 Mich at 12. In arguing to the contrary, plaintiff provided a general consent form in which Baker-Olson authorized medical and hospital care "as deemed necessary in the judgment of the attending physician(s), other medical staff members and health care providers of McLaren Health Care subsidiaries." Plaintiff also provided an acknowledgment of informed consent for surgery, signed by Baker-Olson, which named Martin as one of Baker-Olson's surgeons. These forms do not create a genuine issue of material fact on actual agency. The general consent form only generally refers to health care providers and does not name Martin, while the acknowledgment of informed consent only states Martin was Baker-Olson's surgeon, but otherwise has no information regarding his employment status with McLaren.

Plaintiff failed to provide any evidence of an actual agency relationship between Martin and McLaren. Because plaintiff did not meet the requisite burden of proof, the trial court properly rejected this theory.

## B. OSTENSIBLE AGENCY

Plaintiff also argues there is a genuine issue of material fact regarding whether McLaren was vicariously liable under a theory of apparent or ostensible agency.

"The leading case in Michigan regarding the apparent authority of physicians to act on behalf of a hospital, also referred to as 'ostensible agency,' is *Grewe v Mount Clemens Gen Hosp*, 404 Mich 240, 250-251; 273 NW2d 429 (1978)." *Chapa*, 192 Mich App at 31. In *Grewe,* the plaintiff presented to an emergency room after receiving an electrical shock at work. *Grewe*, 404 Mich at 245-246. The plaintiff was admitted to the hospital and received care from a physician, who had no preexisting relationship with the plaintiff. *Id*. at 246, 254. The Supreme Court explained the governing criteria for determining ostensible agency:

> Generally speaking, a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients. However, if the individual looked to the hospital to provide him with medical treatment and there has been a representation by the hospital that medical treatment would be afforded by physicians working therein, an agency by estoppel can be found. [*Id*. at 250-251 (citations omitted).]

"[T]he critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems." *Id*. at 251. "An agency is ostensible when the principal intentionally or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." *Id*. at 252 (quotation marks and citation omitted). To recover under a theory of ostensible agency:

> (First) The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; (second) such belief must be

generated by some act or neglect of the principal sought to be charged; (third) and the third person relying on the agent's apparent authority must not be guilty of negligence. [*Id*. at 252-253 (quotation marks and citation omitted).]

In *Markel II*, the Supreme Court stated that under *Grewe*, "when a patient is admitted to a hospital for emergency care and looks to the hospital for treatment of physical ailments, a hospital may have an obligation to dispel a patient's belief or assumption that those providing treatment are employed by the hospital." *Markel v William Beaumont Hosp*, 510 Mich 1071, 1073 (2022) (*Markel II*).

Here we conclude that there is a genuine issue of material fact regarding whether McLaren is vicariously liable under a theory of ostensible agency. A reasonable fact-finder could determine that Baker-Olson reasonably believed Martin was an agent of McLaren. Baker-Olson presented to Harbor Beach emergency complaining of chest pain. She was subsequently transferred to McLaren, where Baker-Olson had a surgical consultation with Martin and was recommended for surgery. Baker-Olson did not have a preexisting relationship with Martin before going to McLaren, and she sought treatment from McLaren for her emergent heart condition. See *Grewe*, 404 Mich at 254-255.

Martin did not indicate to Baker-Olson that he was an independent contractor. The only evidence suggesting this is the fact Martin performed surgeries at other hospitals in the area. But the fact that Martin worked at multiple hospitals does not necessarily lead to the conclusion that he was not an agent of McLaren. Baker-Olson was never given "clear notice" of Martin's employment status. See *Markel II*, 510 Mich at 1071 ("A patient who has clear notice of a treating physician's employment status or who has a preexisting relationship with a physician outside of the hospital setting cannot reasonably assume that the same physician is an employee of the hospital merely because treatment is provided within a hospital"); see also *Vargo v Sauer*, 457 Mich 49, 69; 576 NW2d 656 (1998) (recognizing hospital employees may perform for multiple principals).

The trial court's emphasis on *Markel III* was misplaced. First, *Markel III* is an unpublished decision. See MCR 7.215(C)(1). Second, the opinion is distinguishable because, in *Markel III*, the issue of reliance was not contested by the plaintiff. Third, there were key factual differences between *Markel III* and this case. In *Markel III*, the physician was referred to the plaintiff "pursuant to a pre-existing agreement between Hospital Consultants and her primary care physician." *Markel III*, unpub op at 9. There was no such preexisting agreement in this case. Baker-Olson had no connection to Martin before seeking treatment from McLaren. In *Markel III*, we held the trial court correctly granted summary disposition in favor of the hospital because there was lack of evidence of reliance. But, in this case, the evidence suggests Baker-Olson relied on Martin's apparent authority. See *Grewe*, 404 Mich at 252. A reasonable fact-finder could determine Baker-Olson sought treatment at McLaren and relied on McLaren to provide her physicians for treatment. While at McLaren, Martin gave Baker-Olson a surgical consultation and scheduled her surgery. On the advice of Martin, Baker-Olson remained at McLaren pending surgery.

McLaren argues that *Grewe's* holding is limited to emergency room treatment. However, nothing in *Grewe* suggests this to be the case, for under *Grewe* "[t]he critical question is whether

the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems." *Id*. at 251.  See also *Markel II*, 510 Mich at 1071 ("The rule from *Grewe* is that when a patient presents for treatment at a hospital emergency room *and is treated during their hospital stay* by a doctor with whom they have no prior relationship, a belief that the doctor is the hospital's agent is reasonable unless the hospital does something to dispel that belief.") (emphasis added).  Whether such treatment occurred in the emergency room was a fact in *Grewe*, but not a dispositive one.  In fact, the *Grewe* plaintiff presented to the emergency room, but was subsequently admitted to the hospital, and then treated by specialists.  *Grewe*, 404 Mich at 246, 254.

## IV.  CONCLUSION

We reverse the trial court's order granting summary disposition to McLaren, and remand for further proceedings.  We do not retain jurisdiction.  Plaintiff may tax costs, having prevailed in full.  MCR 7.219(A).

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel

-6-